## GARD v. MICHIGAN PRODUCE HAULERS

1. EVIDENCE — ALCOHOL — BLOOD ANALYSIS — ADMISSIBILITY — STATUTES.

   Concern of the legislature for reliability of the results of chemical analysis of blood to determine alcoholic content in prosecutions for driving under the influence of liquor is shown by statutory provisions requiring that only a duly licensed physician or a licensed nurse or medical technician under the direction of a licensed physician acting in a medical environment may withdraw the blood (MCLA § 257.625a as amended by PA 1967, No 253).

2. EVIDENCE — ALCOHOL — BLOOD ANALYSIS — FOUNDATION — RELIABILITY — ADMISSIBILITY.

   A proper foundation must be laid for the admission of a blood sample analysis into evidence to show alcohol content, and a blood sample taken from a corpse by a mortician does not have the inherent reliability essential for this purpose because of his lack of training and experience in properly taking and preserving blood components.

3. EVIDENCE — ALCOHOL — BLOOD ANALYSIS — RELIABILITY — ADMISSIBILITY.

   Reference to a blood alcohol analysis performed on plaintiff's decedent was properly excluded in an action for wrongful death where the blood used in the test was withdrawn from decedent's body by a mortician who admittedly did not have the sterile environment or the training to produce the reliable blood sample necessary for a valid blood alcohol analysis.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 29 Am Jur 2d, Evidence § 830.

Proof of identity of person or thing where object, specimen, or part is taken from a human body, as basis for admission of testimony or report of expert or officer based on such object, specimen, or part. 21 ALR2d 1216.

Appeal from Kent, John T. Letts, J.   Submitted Division 3 October 7, 1969, at Grand Rapids.   (Docket No. 6,141.)   Decided December 3, 1969.   Rehearing denied January 26, 1970.   Leave to appeal denied April 23, 1970.   See 383 Mich 777.

Complaint by Ethel Darlene Gard, administratrix of the estate of Richard O. Gard, deceased, against Michigan Produce Haulers, a partnership, and Associated Truck Lines, Inc., a Michigan corporation, for wrongful death.   Plaintiff's pretrial motion to exclude any references to a test for alcohol made on decedent's blood after his death granted.   Defendants appeal.   Affirmed.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley* and *Cholette, Perkins & Buchanan* (*Edward S. Wells* and *Grant J. Gruel,* of counsel), for plaintiff.

*Smith, Haughey & Rice* (*T. F. Blackwell,* of counsel) for defendants.

Before: R. B. BURNS, P. J., and HOLBROOK and LEVIN, JJ.

HOLBROOK, J.   This cause arises out of a head-on automobile-truck collision which occurred on M-37 in Tyrone township, Kent county, Michigan, on June 18, 1966, at approximately 2:50 a.m.   At that time, plaintiff's decedent was driving a 1965 Ford sedan automobile which collided with a tractor, owned by defendant Michigan Produce Haulers and leased by them to defendant Associated Truck Lines, Inc., which was pulling a trailer owned by Associated. As a result of the collision plaintiff's decedent was killed instantly.

The body of plaintiff's decedent was removed to a nearby mortuary where, at the request of a Michigan state policeman, the mortician, Daniel H. Schroeder, withdrew a specimen of blood. This specimen was placed in a vial, given by the mortician to the policeman and thereafter allegedly subjected to chemical testing for alcoholic content at the Michigan State Department of Health in Lansing, Michigan.

Upon plaintiff's action for wrongful death, brought in Kent county circuit court before the Honorable John T. Letts, defendants interposed as an affirmative defense the following:

"1. Plaintiff's decedent was guilty of negligence which caused or contributed to his fatal injuries and consisted in the following:
"(a) Operating his said vehicle while under the influence of intoxicating liquor contrary to section 9.2325 M.S.A. * * * ."*

Defendants' evidence supporting this contention was the determination of the Michigan State Department of Health regarding the alcoholic content of the blood specimen withdrawn from the corpse of plaintiff's decedent.

Plaintiff filed a motion in advance of trial for entry of an order excluding certain evidence, *viz.*, any reference to the alcohol content test made of the blood specimen withdrawn from the body of plain-

---

* See, currently, PA 1967, No 253, MCLA § 257.625a (Stat Ann 1968 Rev § 9.2325[1]) which provides in part:
"(2) * * * only a duly licensed physician, or a licensed nurse or medical technician under the direction of a licensed physician and duly qualified to withdraw blood, acting in a medical environment, at the request of a police officer, can withdraw blood for the purpose of determining the alcoholic content therein under the provisions of this act. No liability for a crime or civil damages predicated on the act of withdrawing blood and related procedures attaches to a qualified person who withdraws blood or assists in the withdrawal in accordance with this act unless the withdrawal is performed in a negligent manner."

tiff's decedent after his death. Plaintiff based this motion upon MCLA § 257.625a (Stat Ann 1965 Cum Supp § 9.2325[1]) which, at the time of the incident in question, provided in part as follows:

"(1) In any criminal prosecution relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in such person's blood at the time alleged as shown by chemical analysis of the person's blood, * * * shall be admissible * * * .

"(2) Only a duly licensed physician, or a licensed nurse or medical technician under the direction of a licensed physician, acting at the request of a police officer, can withdraw blood for the purpose of determining the alcoholic content therein under the provisions of this act."

This motion was further based upon the affidavit of Daniel H. Schroeder, mortician, duly subscribed and sworn to, which stated in part:

"I am and, at that time, was not a licensed physician or a licensed nurse or a medical technician, nor was there a licensed physician present when I withdrew the blood sample.

"Hayward Mortuary was equipped with the instruments and equipment usually employed for embalming and in the operation of a funeral home, but it is not and was not equipped or designed for medical care or treatment and does not constitute a medical environment as I understand that expression."

In ruling upon plaintiff's motion, the trial court stated in its opinion:

"* * * the court finds that M.S.A. 9.2325 is not reserved for criminal offenses alone but is applicable to the case now being considered. The court is of the opinion that the aforementioned finding can only result in the further finding that only persons au-

thorized under that statute may properly take blood specimens.

" '(2) Only a duly licensed physician, or a licensed nurse or medical technician under the direction of a licensed physician  *  *  *  .'

"Mr. Schroeder, the mortician, does not qualify in any respect as a person privileged to take such a specimen.  *  *  *

"The blood sample taken in this case was not drawn in a medical environment, nor was the drawer a medical technician within the statute. The author is of the opinion that the statute was drawn to guard against just such acts as that done in this instance. It is quite obvious that a licensed mortician is not interested in preserving the composition of blood drawn from a body and therefore has not the sanitary vessels in which to place said blood or instruments that have been properly sterilized aseptically as one would find in a hospital setting, nor is the training for accomplishing a specific task present in the person performing the operation.

"The court finds that the test results are inadmissible since the procedure has not been properly followed for the taking of such sample."

Defendants appeal, pursuant to leave granted, from the order of the trial court, entered on June 7, 1968, granting plaintiff's motion to exclude all evidence of the blood sample.

The issue to be determined on appeal is restated as follows:

*Did the trial court commit error in ruling that evidence of tests conducted upon a blood sample withdrawn by a mortician was not properly admissible?*

The concern of our state legislature for the reliability of blood sample analyses is reflected in the requirements set forth in MCLA § 257.625a (Stat Ann 1965 Cum Supp § 9.2325[1]), as amended, pertaining to those persons who are deemed qualified to withdraw blood in order to determine its alcoholic

content. The quality of blood samples may best be protected by compliance with the safeguards therein approved by the legislature, *viz.*, withdrawal of blood specimens by duly licensed physicians, licensed nurses or medical technicians acting under the direction of licensed physicians, as well as the additional safeguards enacted in 1967, including the requirement that the blood be withdrawn in a medical environment.

In *Lessenhop* v. *Norton* (1967), 261 Iowa 44 (153 NW2d 107), which involved an action for wrongful death arising out of an automobile accident, the Iowa Supreme Court held that, contrary to defendant's contention, while the statute providing for chemical tests for intoxicated drivers governed the authority to take blood tests when a person was suspected of driving while intoxicated, it provided no rules for admission of such tests into evidence in wrongful death actions where made by a county medical examiner in the performance of his duty to inquire as to the cause and manner of death. The court, however, determined that certain particular standards must be met before the result of a blood test analysis may properly be admitted in evidence in any civil or criminal case. The rules there laid down by the court for admissibility of a blood sample analysis were stated as follows (153 NW2d at p 108):

"[T]he party seeking introduction must show (1) that the blood was timely taken (2) from a particular identified body (3) by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments used were sterile, (5) that the blood taken was properly preserved or kept, (6) and labeled, and (7) if transported or sent, the method and procedures used therein, (8) the method and procedures used in conducting the test, and (9) that the identity

of the person or persons under whose supervision the tests were conducted be established."

The foregoing requirements determined and set forth by the court in the *Lessenhop case, supra,* as conditions precedent to the admission of a blood sample analysis into evidence were clearly intended to prevent the admission of test results obtained from an unreliable blood sample. Concern for blood sample purity, and, therefore, reliability, was likewise manifested in *Barnes* v. *Smith* (CA10, 1962), 305 F2d 226, involving wrongful death and personal injury actions arising out of an automobile-truck collision. The appellate court, affirming the judgment of the lower court, stated at pp 231, 232:

"Claim is also made that the court erred in refusing to admit in evidence the results of a blood-alcohol test made by a laboratory technician from a blood sample withdrawn from the deceased driver Smith. * * *

"The result of the chemical analysis of the blood sample withdrawn from the deceased driver Smith indicated an alcohol content nearly three times that sufficient under accepted standards to produce drunkenness. The reliability of such test as indicative of condition is, of course, entirely dependent upon the scientific accuracy of the test. In the case at bar the blood was withdrawn by an embalmer under conditions clearly indicating the probability of lack of chemical purity. Under such circumstances the trial court did not abuse his discretion in rejecting the results of the tests for plaintiffs did not meet the burden of establishing a proper foundation for the proffered evidence."

We conclude that, upon the basis of the *Lessenhop* and *Barnes* cases, *supra,* a proper foundation must be laid for admission into evidence of the results of a blood sample analysis and that a blood sample

taken by a mortician does not have the inherent reliability essential for this purpose, owing to his lack of training and experience in properly taking and preserving blood components. See, also, *Murphy* v. *New York State Thruway Authority* (1960), 23 Misc 2d 1078 (204 NYS2d 953); 32 CJS, Evidence, § 588 (2).

Having determined, upon the basis of minimal standards of admissibility, that the trial court did not commit error in ordering exclusion of the proffered evidence of tests conducted upon the blood sample in question, we find it unnecessary to rule upon defendants' contention that the provisions of MCLA § 257.625a (Stat Ann 1965 Cum Supp § 9.2325 [1]), as amended, apply exclusively to criminal prosecutions for driving under the influence of intoxicating liquor.

All concurred.