ROSE v PAPER MILLS TRUCKING COMPANY

1. EVIDENCE—BLOOD SAMPLE—FOUNDATION—WORKMEN'S COMPENSA-
TION.

The party seeking introduction of the results of a blood sample
analysis must show (1) that the blood was timely taken, (2)
from a particular identified body, (3) by an authorized licensed
physician, medical technologist, or registered nurse designated
by a licensed physician, (4) that the instruments used were
sterile, (5) that the blood taken was properly preserved or kept,
(6) and labeled, and (7) if transported or sent, the method and
procedures used therein, (8) the method and procedures used in
conducting the test, and (9) that the identity of the person or
persons under whose supervision the tests were conducted be
established; where the proper foundation was not laid for
admitting into evidence the results of the blood sample test
because of the failure to call and question the medical exam-
iner who withdrew the blood sample from decedent's body, the
hearing referee and the Workmen's Compensation Appeal
Board which heard the case did not err in disregarding testi-
mony concerning the results of the test relating to the alcohol
content of a deceased employee's blood.

2. WORKMEN'S COMPENSATION—DEPENDENCY—QUESTION OF LAW.

The question of dependency ordinarily is for purposes of the
Workmen's Compensation Act a fact question; but if the undis-
puted facts clearly show no total dependency, the question may
be decided by the court as a matter of law (MCLA 418.321,
418.331).

3. WORKMEN'S COMPENSATION—DEATH BENEFITS—DEPENDENCY.

For purposes of the death-benefit provisions of the Workmen's
Compensation Act a deceased employee's minor stepson who is
receiving social security benefits as a result of his natural
father's earlier death was only partially dependent upon the

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Workmen's Compensation § 531.
[2] 58 Am Jur, Workmen's Compensation § 461.
[3] 58 Am Jur, Workmen's Compensation § 179.

deceased for support, and where the deceased left a wife and daughter who were wholly dependent upon him for support no death benefits under the Workmen's Compensation Act should be paid for the partially dependent stepson (MCLA 418.321).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 February 6, 1973, at Detroit. (Docket No. 14293.) Decided April 30, 1973.

Lee E. Rose presented her claim for workmen's compensation benefits against the Paper Mills Trucking Company. Benefits awarded. Defendant appeals. Affirmed in part and reversed in part.

*Leonard J. Paterson,* for the plaintiff.

*LeVasseur, Werner, Mitseff & Brown* (by *Grahame G. Capp),* for the defendants.

Before: T. M. BURNS, P. J., and BASHARA and ADAMS,* JJ.

PER CURIAM. Richard Rose, plaintiff's decedent, was a broker-driver employed by defendant trucking company. At 1:15 a.m. on November 17, 1968, he met his death when his tractor and trailer crashed into a bridge abutment on I-94 near the interchange with I-69. Defendants appealed the decision of the Workmen's Compensation Department hearing referee who found that death arose out of and in the course of decedent's employment and that the widow and two minor children were entitled to death compensation benefits. Defendants contended that they were excused from liability because of decedent's "intentional and wilful

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

misconduct" in allegedly being intoxicated at the time of his death.

On the issue of intoxication, the opinion of the Workmen's Compensation Appeal Board states:

"In this case, the defendant attempted to show that decedent not only drank before the fatal crash but was in an intoxicated state at the time of the incident. Much of the testimony was objected to by plaintiff's counsel, some admitted in a separate record and some admitted without restriction. We think that the referee properly disregarded testimony made on the separate record relative to the post mortem blood alcohol content test.

"It is apparent that the blood specimen of the deceased was taken without statutory authority and without the consent of the next of kin. Testimony of the investigating police officer indicated that the blood was drawn by the medical examiner. MCLA 326.8 authorizes and empowers the coroner to investigate the cause of any death, occurring without medical attendance, to determine the cause of death. However, where, as here, the cause of death is known, the coroner is not statutorily authorized to take blood specimens for other purposes. Op. Atty. Gen. 1960 No. 3522, p 118."

In *Gard v Michigan Produce Haulers,* 20 Mich App 402 (1969), the body of plaintiff's decedent, who was killed in a head-on automobile-truck collision, was removed to a nearby mortuary. At the request of a Michigan state policeman, the mortician withdrew a specimen of blood. The specimen was placed in a vial, given by the mortician to the policeman and thereafter allegedly subjected to chemical testing for alcoholic content at the Michigan State Department of Health in Lansing, Michigan.

The trial court in *Gard* declared the test results inadmissible. On appeal, this Court quoted with approval the following rules for admissibility of a

blood sample analysis as stated in *Lessenhop v Norton,* 261 Iowa 44; 153 NW2d 107 (1967) *(Gard, supra,* pp 407–408):

" '[T]he party seeking introduction must show (1) that the blood was timely taken (2) from a particular identified body (3) by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments used were sterile, (5) that the blood taken was properly preserved or kept, (6) and labeled, and (7) if transported or sent, the method and procedures used therein, (8) the method and procedures used in conducting the test, and (9) that the identity of the person or persons under whose supervision the tests were conducted be established.' "

This Court noted that the above requirements were "clearly intended to prevent the admission of test results obtained from an unreliable blood sample" and concluded that "a proper foundation must be laid for admission into evidence of the results of a blood sample analysis". *Gard, supra,* p 408.

In the present case, State Police Trooper Gene Conley testified during the hearing as follows:

*"Q.* Now, when you arrived at the scene, did you call the coroner?

*"A.* Yes.

*"Q.* And did the coroner arrive?

*"A.* Medical examiner.

*"Q.* Medical examiner. Did you request a blood sample be taken?

*"A.* I asked if the blood sample could be obtained.

*"Q.* All right, and did you obtain a blood sample in this case?

*"A.* I did not personally. I mean I did not withdraw any blood.

*"Q.* You didn't do it yourself. Did you have it obtained?

"*A.* Yes.

"*Q.* And did you receive it from that person?

"*A.* Yes.

"*Q.* And I show you Defendant's Separate Record Exhibit Number 1, all of this, and ask you if this is the sample of blood that you had taken, and further whether or not you sent this to the Michigan, the chief, State Crime Detection Laboratory, Division of Laboratories, Michigan Department of Health, Lansing, Michigan?

"*Mr. Paterson:* The same objection, if the Commissioner please. This testimony is immaterial at the present time.

"*The Referee:* We will take the answer as to the fact that the sample was taken on that basis only.

"*A.* This is the container that I—this unit is the container that I mailed to the department.

"*Mr. Paterson:* All right.

"*Q. (By Mr. Lichty):* All right. Then this small container is Defendant's Separate Record Exhibit Number 1. On the small bottle are there any initials, are your initials on the bottle?

"*A.* Yes.

"*Q.* All right, and this is the sample taken at your request, is that correct?

"*A.* The request of the medical examiner.

"*Q.* All right. At your—

"*A.* Request of the medical examiner, at his request.

"*Q.* All right. Now, did you mail these to Lansing as indicated?

"*A.* Yes, I did."

The medical examiner who took the blood sample from Mr. Rose did not testify. It will be readily apparent from the facts of this case that his testimony was required to show compliance with the first six criteria laid down by *Gard* as prerequisites to the admissibility of a blood sample analysis. Since a proper foundation was not laid for admitting into evidence the results of the blood sample

analysis, the hearing referee and the Workmen's Compensation Appeal Board did not err in disregarding the testimony relating to the alcohol content of decedent's blood. See *Bauer v Veith,* 374 Mich 1 (1964).

In view of our holding, we find it unnecessary to rule upon plaintiff's contention that the provisions of MCLA 257.625a; MSA 9.2325(1) apply exclusively to criminal prosecutions for driving under the influence of intoxicating liquor, or to determine whether in a civil action such as this the testimony of a medical examiner regarding performance of his duties under MCLA 52.201 *et seq.;* MSA 5.953(1) *et seq.* is admissible or can only be admitted following consent to the giving of such testimony by the deceased's next of kin.

The Appeal Board found that the death of Richard Rose was not shown to have been occasioned by his intentional and wilful misconduct. We find that this determination of fact by the Appeal Board is supported in the record. *Thornton v Luria-Dumes Co-Venture,* 347 Mich 160 (1956).

The final question for consideration is whether or not the Appeal Board erred in its finding that Daryl Mynes, deceased's stepson, was a dependent under the Workmen's Compensation Act. Lee Rose had been married previously and as a result of her first husband's death received social security benefits for herself and for Daryl Mynes, her child by the former marriage. When she remarried, the benefits continued to Daryl at the rate of $84 per month, later increased to $105 per month. Mrs. Rose saved these benefits for Daryl's education.

The relevant statutory provisions governing dependency under the Workmen's Compensation Act of 1969 are MCLA 418.321; MSA 17.237(321) and MCLA 418.331; MSA 17.237(331). Ordinarily, the

question of dependency is a fact question, but if the undisputed facts clearly show no total dependency, the question may be decided by this Court as a matter of law. See *Compton v Ford Motor Co,* 337 Mich 654 (1953).

The precise issue presented in this case is whether Daryl Mynes was *wholly* dependent upon decedent for support, or whether he was but *partially* dependent upon the deceased. MCLA 418.331; MSA 17.237(331). In 2 Larson, Workmen's Compensation Law, § 63.13, pp 134.7–134.8, the governing rule is stated as follows:

"However, any substantial and reasonably regular income from any source other than the decedent will in most states bar a finding of total [dependency]. Thus, an award to a stepchild as a total dependent on the stepfather with whom he was living was reversed, since the child had an independent income of $42 a month, although the mother was using a large part of this sum to pay life insurance premiums for the child. *[Magma Copper Co v Aldrete,* 70 Ariz 48; 216 P2d 392 (1950).]*"

See also *Garbutt v Stoll,* 287 Mich 396 (1939).

Daryl Mynes received social security benefits of $105 per month due to his natural father's earlier death, and therefore was only partially dependent upon deceased for support. Since plaintiff and her daughter by her marriage with deceased were both wholly dependent upon the latter for support, it is apparent that no death benefits should have been made for the partially dependent Daryl Mynes. MCLA 418.331; MSA 17.237(331). We therefore order the death benefit award reduced from $75 per week to $69 per week in accordance with the dictates of MCLA 418.321; MSA 17.237(321).

Affirmed in part and reversed in part. No costs awarded, neither party having prevailed in full.