PEOPLE v CORDS

1. INTOXICATING LIQUORS—EVIDENCE—BLOOD-ALCOHOL TESTS—IMPLIED
   CONSENT STATUTE—STATUTES.

   Blood-alcohol test results which are obtained pursuant to the
   implied consent statute are admissible as evidence only in the
   statutorily specified prosecutions for driving under the influ-
   ence of intoxicating liquor or driving while ability to operate a
   vehicle was impaired due to the consumption of intoxicating
   liquor (MCLA 257.625a; MSA 9.2325[1]).

2. INTOXICATING LIQUORS—EVIDENCE—BLOOD-ALCOHOL TESTS—IMPLIED
   CONSENT STATUTE—WRONGFUL DEATH ACTIONS—STATUTES:

   The results of blood-alcohol tests obtained pursuant to the exer-
   cise of statutory authority are inadmissible as evidence in
   wrongful death actions where proper statutory procedure was
   not followed by the police (MCLA 257.625a; MSA 9.2325[1]).

3. INTOXICATING LIQUORS—EVIDENCE—BLOOD-ALCOHOL TESTS—IMPLIED
   CONSENT STATUTE—SEARCHES AND SEIZURES—SEARCH WAR-
   RANTS—STATUTES.

   The "implied consent" statute is not a factor in the admissibility
   into evidence of blood-alcohol test results where a valid search
   warrant had been issued for the extraction of blood from a
   defendant (MCLA 257.625a; MSA 9.2325[1]).

4. CONSTITUTIONAL LAW—EVIDENCE—STATE STANDARD—FEDERAL
   STANDARD—INTOXICATING LIQUORS—BLOOD-ALCOHOL TESTS.

   The standards for the admission into evidence of blood-alcohol

REFERENCES FOR POINTS IN HEADNOTES

[1–5, 7–9] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 259, 260,
   332, 333.
[3, 5] 68 Am Jur 2d, Search and Seizure §§ 29, 105.
[4, 9] 29 Am Jur 2d, Evidence § 830.
   Proof of identity of person or thing where object, specimen, or part
   is taken from a human body, as basis for admission of testimony
   or report of expert or officer based on such object, specimen, or
   part. 21 ALR2d 1216.
[6] 68 Am Jur 2d, Search and Seizure § 41 *et seq.*

test results may be stricter under the Michigan Constitution than under the Federal standard.

5. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—EVIDENCE—INTOXICATING LIQUORS—CRIMINAL LAW—SEARCH WARRANTS—BLOOD-ALCOHOL TESTS.

The provision in the Michigan Constitution guaranteeing an individual the right of security of person does not bar the admission into evidence of the results of a blood-alcohol test in a defendant's trial on a charge of involuntary manslaughter where the blood had been extracted pursuant to a valid search warrant (Const 1963, art 1, § 11).

6. SEARCHES AND SEIZURES—SEARCH WARRANTS—PROBABLE CAUSE—INDEPENDENT JUDGMENT.

An investigating police officer must offer sufficient information to support an independent judgment that probable cause does exist for the issuance of a search warrant in order for the warrant to be validly issued.

7. SEARCHES AND SEIZURES—SEARCH WARRANTS—PROBABLE CAUSE—INTOXICATING LIQUORS—BLOOD-ALCOHOL TESTS—EXTRACTION OF BLOOD.

Sufficient probable cause did exist for the issuance of a search warrant for the extraction of blood from a defendant for a blood-alcohol test where a police officer, investigating a traffic accident involving the defendant, indicated in his affidavit that he had discovered that the defendant's breath smelled strongly of alcohol, that he had traced a partially full can of beer to the defendant's vehicle and that the driver of the other car had been killed in the accident.

8. INTOXICATING LIQUORS—IMPLIED CONSENT STATUTE—BLOOD-ALCOHOL TESTS—EVIDENCE—BREATH TESTS—APPEAL AND ERROR—STATUTES.

The implied consent statute provides a person charged pursuant to the statute with a right to have a party of his own choosing administer specified tests, the results of which will be admissible with other competent evidence in determining guilt or innocence, and also gives the person charged under the act the right to demand that only a breath test be given; however, where the prosecution does not rely upon the implied consent statute to obtain the defendant's blood and to administer the blood-alcohol test, there is no error because of failure of law enforcement officials to advise the defendant of rights contained in the implied consent statute (MCLA 257.625a; MSA 9.2325[1]).

9. Evidence—Blood Sample Analysis—Proofs—Witnesses—Medical Witnesses.

A party seeking introduction into evidence of a blood sample analysis must show (1) that the blood was timely taken, (2) from a particular identified body, (3) by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments used were sterile, (5) that the blood taken was properly preserved or kept, (6) and labeled, and (7) if transported or sent, the method and procedures used therein, (8) the method and procedure used in conducting the test, and (9) that the identity of the person or persons under whose supervision the tests were conducted is established; testimony which insures the reliability of the blood sample taken and connects the sample with a defendant may be sufficient even if the witnesses testifying as to the first six steps are not all medical personnel.

Appeal from Shiawassee, Peter J. Marutiak, J. Submitted January 12, 1977, at Lansing. (Docket No. 27996.) Decided May 3, 1977.

Edward W. Cords was convicted of involuntary manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Gerald D. Lostracco,* Prosecuting Attorney, and *Daniel J. Loomis,* Chief Assistant Prosecutor, for the people.

*McClear & McClernan,* for defendant on appeal.

Before: D. E. Holbrook, Jr., P. J., and V. J. Brennan and Bronson, JJ.

V. J. Brennan, J. Defendant Edward William Cords was charged with involuntary manslaughter, contrary to MCLA 750.321; MSA 28.553. He was tried by a Shiawassee Circuit Court jury and convicted on January 29, 1976. On February 23, 1976, defendant was sentenced to a prison term of from 5 to 15 years, with appropriate credit given for time already served. Defendant appeals, as of

right, requesting that this Court reverse his conviction.

This cause arose out of an automobile accident occurring on the night of August 16, 1975, on Lansing Road in Perry, Michigan. The lower court record reflects that defendant, while driving alone from a party, crossed over into the wrong lane and collided head-on with another vehicle driven by a 15-year-old boy, Darwin Dansby. Dansby was fatally injured. Shortly afterward, a Shiawassee County Sheriff's Deputy arrived at the scene of the accident. At that time, he discovered that Dansby had been killed and the defendant was injured and required medical treatment. Upon further examination of the scene, the Sheriff discovered a partially open can of beer near the front of the automobile's passenger side, spilled beer on the front floor of defendant's automobile, and the strong smell of alcohol on defendant's breath.

About 4 a.m. that same morning, the deputy, based upon the information obtained at the scene of the crime, sought a search warrant permitting him to obtain a blood sample from defendant for a blood-alcohol contents test. The search warrant was authorized by a Shiawassee County assistant prosecuting attorney, and the warrant was issued by 66th District Court Judge Raymond Basso. The warrant was served upon the attending physician at Sparrow Hospital, where the injured defendant had been taken. At the doctor's direction, a registered nurse then took a sample of defendant's blood. The blood sample was transferred to the Michigan State Department of Public Health, where an analysis was performed.

Prior to defendant's preliminary examination, counsel moved to have any reference to the blood-alcohol test results suppressed. In support of this

motion, defendant alleged that the tests were not admissible since they were not relevant to the offense for which defendant was charged. He also argued that the blood sample had been taken in violation of his constitutional rights against self-incrimination, right to counsel, and right to due process of law. He contended further that the test results and the presumptions drawn from them were admissible only in cases where the charges were driving under the influence of intoxicating liquor (hereafter DUIL) or driving while ability to operate a vehicle was impaired due to the consumption of intoxicating liquor (hereafter DI). See MCLA 257.625a(1); MSA 9.2325(1)(1). At the commencement of defendant's preliminary examination, the court entertained counsel's arguments on this motion. In denying defendant's motion, the court found that the defendant's blood specimen had been lawfully secured, and therefore the blood analysis results could be introduced into evidence.

Subsequently, defense counsel filed a number of other motions to suppress this evidence on similar grounds. These motions were once again denied by the judge on January 22, 1976. During defendant's trial, defense counsel again attempted to have such evidence suppressed or precluded from admission. All such motions and objections to the admission of such evidence were denied. After this evidence had been admitted at trial and the prosecution had rested its case, the defense moved for a mistrial on the grounds that the defendant had not been advised at the time the sample had been taken that he was entitled to have a person of his own choosing perform an additional blood-alcohol test on the sample. MCLA 257.625a(3); MSA 9.2325(1)(3). This motion was also denied by the trial court.

On appeal, defendant brings three allegations of error. We will discuss them in order.

Defendant argues first that the trial court committed reversible error by denying a pretrial motion to suppress the results of the blood-alcohol content test.

The initial issue we face is whether two recent Michigan Supreme Court decisions preclude the admission of blood-alcohol test results performed on a specimen of a defendant's blood at defendant's trial for manslaughter where such samples had been taken from the defendant without his consent but pursuant to a validly issued search warrant. *People v Keen,* 396 Mich 573; 242 NW2d 405 (1976), *McNitt v Citco Drilling Co,* 397 Mich 384; 245 NW2d 18 (1976).

In *Keen,* the Court ruled that when blood alcohol test results had been obtained pursuant to the "implied consent" statute, MCLA 257.625a(1), those results would only be admissible in the statutorily specified prosecutions for DUIL or DI. The Court therefore found reversible error where such test results were admitted in a prosecution for manslaughter. *People v Keen, supra,* at 585–586.

Likewise, in *McNitt,* the Court held in a wrongful death action that results of blood-alcohol tests obtained pursuant to the exercise of statutory authority were inadmissible in that civil litigation where proper statutory procedure was not followed by police. *McNitt v Citco Drilling Co, supra,* at 393–394.

However, while we recognize on the basis of *Keen* and *McNitt* that blood-alcohol content test results obtained pursuant to the statute are admissible only in DUIL and DI prosecutions, and not at

all if statutory procedures are not explicitly followed, we also believe the test results in this case, though taken without defendant's consent, were not obtained "pursuant to the statute". See *People v Weaver,* 74 Mich App 53; 253 NW2d 359 (1977).

What makes the present case totally different from *Keen, McNitt* or *Weaver* is the presence here of a validly issued search warrant. By obtaining this warrant prior to extracting blood from defendant, authorities removed the issue of consent from this case and therefore removed any question of admissibility from the "implied consent" statute. Because of the warrant, we perceive no possible reliance by hospital personnel on the protections of the statute, no triggering of presumptions under the statute and no need to observe specified statutory procedures. *People v Weaver, supra, McNitt v Citco Drilling Co, supra.* In short, the "implied consent" statute was simply not a factor in obtaining the blood sample and test results and consequently does not act to limit the evidentiary use to which these test results may be put.

However, determining this fact only means that *Keen* and *McNitt* will not preclude admission of test results. Still, admitting the results of the blood tests must be shown to be consistent with Federal and state constitutional principles. At the outset, we note one Michigan decision which has found similar blood-alcohol tests inadmissible under article 2, § 10, of the Michigan Constitution of 1908 (now Const 1963, art 1, § 11). *Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958).

In *Lebel,* blood was taken from an unconscious defendant following an automobile accident and offered as evidence against him in a subsequent wrongful death action. The Michigan Supreme Court found the blood test results inadmissible as

a violation of defendant's "right of security of person" under the Michigan Constitution.

However, we observe the Court relied in its reasoning on certain Federal decisions which did not provide clear cause for exclusion even at this time. See *Breithaupt v Abram,* 352 US 432; 77 S Ct 408; 1 L Ed 2d 448 (1957) (where the Supreme Court, though noting probable exclusion in Federal courts on Fourth Amendment grounds, upheld admission of a blood-alcohol test in a New Mexico state manslaughter prosecution). See also, *Wolf v Colorado,* 338 US 25; 69 S Ct 1359; 93 L Ed 1782 (1949).

Furthermore, we find that the complexion of Federal law changed considerably shortly after *Lebel. Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966). In *Schmerber* the Supreme Court found that even where no warrant was obtained, the blood test results were not inadmissible under the Fourth Amendment. This decision technically is not binding on a Michigan decision such as *Lebel* which finds exclusion of blood test results necessary under the Michigan Constitution. We realize the measure for such admissibility under our Constitution may be stricter than the Federal standard.

Nonetheless, we find that such fundamental change in position by the United States Supreme Court when clearly a major factor of reliance by our Supreme Court in *Lebel* should reasonably signal proper basis for re-evaluation of that decision. *People v Keen, supra,* at 576, *McNitt v Citco Drilling Co, supra,* at 388, 395-397.[1] We find

---

[1] Justice LEVIN in *Keen* gives a broad reading to *Lebel* which would imply that the presence of a warrant would not be a controlling factor. *People v Keen, supra,* at 576-577. *See also McNitt v Citco Drilling Co, supra,* at 388-389. Because of this reading, we confront *Lebel* directly rather than simply distinguishing the decision on the

*Schmerber* both persuasive and applicable in a situation where finding the implied consent statute not to be controlling forces us to test admissibility by constitutional standards. We also note importantly that securing a proper search warrant in this case makes the argument not to exclude under the Michigan Constitution even stronger than simply relying on *Schmerber* alone. In short, we believe the admission of blood alcohol content test results should not be barred in this case under article 1, § 11 of the Michigan Constitution on the strength of *Lebel v Swincicki, supra.*

Having now determined no cause to exclude the tests administered in this matter either because of the implied consent statute or Federal or state constitutional considerations, we turn to whether probable cause existed to issue the warrant which was used to extract defendant's blood in the first place.[2]

For a warrant to be validly issued, the investigating officers must offer sufficient information to support an independent judgment that probable cause does exist for the issuance of the warrant. *Whiteley v Warden,* 401 US 560, 564; 91 S Ct 1031; 28 L Ed 2d 306 (1971), *People v Marshall,* 69 Mich

---

basis of the warrant here. *See McNitt v Citco Drilling Co, supra,* at 396–397 (Lindemer, J. dissenting).

[2] We recognize that a high standard of determining probable cause is employed in situations involving Fourth Amendment considerations:

"Whatever the validity of these considerations in general, they have little applicability with respect to searches involving intrusions beyond the body's surface. The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." *Schmerber v California, supra,* at 384 US 769–770.

App 288, 300–301; 244 NW2d 451 (1976). The lower court record reflects that the investigating officer filed the appropriate affidavit containing sufficient information upon which the judge could conclude that the necessary "probable cause" existed for the issuance of a search warrant permitting the taking of defendant's blood sample. In his affidavit, the officer indicated that he had discovered during the investigation of the accident that defendant's breath smelled strongly of alcohol and that he had traced a partially full can of beer to defendant's vehicle. He also stated that the driver of the other car had been killed in the accident. Based on this information, it was probable that defendant might have been intoxicated at the time of the accident and, as a result, criminally liable. Thus, sufficient probable cause did exist for the issuance of the warrant. We find no error in admitting the results of the blood-alcohol content tests in this case.

Defendant next contends the trial court committed reversible error in denying his motion to suppress the results of a blood-alcohol test performed on a specimen of his blood where law enforcement officials failed prior to the extraction of the blood to advise him of his right under MCLA 257.625a–f; MSA 9.2325(1)–(6), to have a person of his own choosing perform a blood-alcohol test on the specimen.

In *People v Blondia,* 69 Mich App 554; 245 NW2d 130 (1976), this Court was faced with a contention similar to the one advanced by defendant here. In that case, defendant was charged with manslaughter and convicted of the lesser included offense of negligent homicide. On appeal, the defendant advanced as one of his allegations of error that blood test results intending to establish that he was intoxicated at the time of the accident had

been improperly admitted because he had not been informed of his rights pursuant to MCLA 257.625a(3), (6).

MCLA 257.625a(3) provides a person charged pursuant to the statute with a right to have a party of his own choosing administer specified tests, the results of which would be admissible with other competent evidence in determining his guilt or innocence. MCLA 257.625a(6) gives the person charged under the act the right to demand that only a breath test be given. Because of these provisions, defendant reasoned that the blood sample had been illegally taken from him and thus should have been held to be inadmissible as evidence. *People v Blondia, supra,* at 560.

The Court rejected this argument. They reasoned that the "implied consent" statute relied upon by the defendant to advance these assertions was applicable only to charges of driving while impaired and not to charges of other crimes. Given this premise, the Court held that the statutory provisions upon which defendant was relying were inapplicable to the case at issue and so error was committed by the trial court in admitting evidence of the blood test. *People v Blondia, supra,* at 560–561.

Defendant here relies on the statute. However, as we have previously noted, the statute is not applicable to this case. Prosecution simply did not rely upon the implied consent statute to obtain defendant's blood and to administer the blood-alcohol test. As a result, we perceive no error because law enforcement officials failed to advise defendant of rights defined in MCLA 257.625a(3), (6).

Finally, defendant alleges the trial court erroneously ruled that the prosecutor had laid a proper foundation for the admission of the defend-

ant's blood-alcohol test results where the nurse taking the specimen did not herself label the blood specimen.

Prior to the introduction of the blood-alcohol test results into evidence, prosecution introduced the testimony of one of the investigating officers and the nurse who had drawn the blood to establish the procedure followed at that time. Such testimony established that the registered nurse had, pursuant to the direction of attending physician, used a sterile syringe and needle to remove defendant's blood and placed the blood in a stoppered glass tube. She then handed the tube to the officer. The officer retained possession of the vial and later delivered it to the arresting officer, who took the vial to the public health laboratory. The state public health analyst then took the blood which had been previously labeled and placed it in the Health Department's refrigeration unit and tested it.

Defense counsel objected to the admission of the blood test results on the ground that the prosecution had not laid a proper foundation for the admission of such evidence. Relying on recent cases from this Court, defense counsel argued that the prosecution's foundation was infirm since there was no testimony given by the nurse concerning the labeling of the bottle. *Clark v Flint,* 60 Mich App 364; 230 NW2d 435 (1975), *Gard v Michigan Produce Haulers,* 20 Mich App 402; 174 NW2d 73 (1969). The Court denied defendant's motion.

On appeal, defendant essentially raises the same arguments that he raised in the trial court. Applying the relevant law to the facts, we believe defendant's contention is without merit.

As noted by counsel, this Court in *Clark* out-

lined the rules concerning admissibility of blood sample analyses. *Clark v Flint, supra* at 366–367. Quoting at 367 from our prior decision in *Gard, supra,* at 407–408 we stated:

"[T]he party seeking introduction must show (1) that the blood was timely taken (2) from a particular identified body (3) by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments were sterile (5) that the blood taken was properly preserved or kept (6) and labeled and (7) if transported or sent, the method and procedures used therein, (8) the method and procedures used in conducting the test, and (9) that the identity of the person or persons under whose supervision the tests were conducted be established."

We further stated that compliance with the first six criteria required the testimony of the medically qualified individual who had taken the blood sample. *Clark v Flint, supra* at 367, *Rose v Paper Mills Trucking Co,* 47 Mich App 1, 5; 209 NW2d 305 (1973).

In arguing that the first six criteria must be established through the testimony of the medical person who had taken the blood sample, defendant relies upon *Rose.* An examination of *Rose* indicates that the Court was not attempting to establish an inelastic rule requiring that compliance with the initial six criteria be established through the testimony of a physician or nurse. *Rose v Paper Mills Trucking Co, supra,* at 5–6. We were merely indicating that because of the peculiar facts in that case, it was necessary for the medical examiner who had taken the blood sample to testify concerning compliance with the initial six criteria.

In that case, unlike the instant case, the medical person who had extracted the blood did not testify at all. Here, the testimony of the nurse who ex-

tracted defendant's blood was offered and did establish compliance with the first five criteria. In addition, the testimony of the two officers and the public health department analyst sufficiently established that the blood upon which the tests were performed was that of the defendant. Such testimony established an unbroken chain of custody. The mere fact that the nurse did not testify that she had herself labeled the bottle should not be held sufficient to preclude the admission of the test results into evidence.

We feel these rules were designed to insure that the blood tested was in fact that of the accused and to prevent the admission of test results obtained from an unreliable blood sample. See *Gard v Michigan Produce Haulers, supra,* at 408. In this case, the testimony offered at the defendant's trial did insure the reliability of the blood sample taken and sufficiently connected this sample with the accused. Therefore, the purposes of the rules were served, despite the fact that the nurse had not testified concerning the labeling of the sample. The trial court did not err in ruling that a sufficient foundation had been laid for the introduction into evidence of the blood test results obtained by the analyst.

We have examined defendant's other various claims of error; we find none persuasive.

Affirmed.