# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 21, 2015

Plaintiff-Appellee,

v

No. 320947
Oakland Circuit Court
LC No. 2013-245872-FH

ALISON BRIDGET PARKE,

Defendant-Appellant.

Before: HOEKSTRA, P.J., and SAWYER and BORRELLO, JJ.

PER CURIAM.

Defendant was charged with one count of operating a motor vehicle while intoxicated, MCL 257.625(1). A jury convicted defendant of the lesser offense of driving while visibly impaired, third offense. MCL 257.625(3) and 11(c). The trial court sentenced defendant to three years' probation, with 90 days to be served in jail.[1] Defendant appeals her conviction as of right. For the reasons set forth in this opinion, we affirm.

## I. FACTS

Defendant was charged with operating a vehicle while intoxicated, third offense, MCL 257.625(1) and (9)(c), for an incident that occurred on February 16, 2013. "Operating while intoxicated" consists of driving under the influence of alcohol or having an unlawful blood-alcohol level. MCL 257.625(1)(a), (b), and (c).

Matthew Gorman, a Rochester police officer, testified that he was on routine patrol on the night of February 15-16, 2013. Sometime between 2:00 and 3:00 a.m., Gorman was entering the eastbound lane of University Drive when he saw a red Jeep in the westbound lane with its headlights off. Gorman turned around and effectuated a traffic stop. In following the vehicle, Gorman saw that the taillights were off, but did not notice any other problems.

---

[1] Defendant also pleaded guilty to driving with a suspended license, MCL 257.904(1). That conviction is not at issue here.

-1-

Gorman found two people in the car; defendant was in the driver's seat. In speaking to defendant, Gorman detected the odor of alcohol "coming from her person and from the vehicle." Defendant's eyes were bloodshot and watery, her face was flushed, and her speech was slurred. Defendant admitted that she had consumed alcohol sometime earlier in the evening. Gorman then administered field sobriety tests.

During the horizontal gaze nystagmus test, defendant's eyes showed "distinct" nystagmus. Defendant was able to perform the alphabet test and the counting-backward test, but failed the standing-on-one-leg-while-counting test and the walking-heel-to-toe test. Gorman asked defendant "if she felt safe to be driving" and she said that while she thought that she was over the legal limit, "she felt comfortable enough to drive." Gorman arrested defendant for drunk driving and transported her to the police station. Defendant's booking photograph and the recording of the stop captured by Gorman's dashboard camera were admitted into evidence and the recording was played for the jury.

At the station, Gorman advised defendant of her chemical test rights and asked if she would submit to a blood test. Defendant refused, then consented, then refused again, so Gorman obtained a warrant for a blood draw. After the warrant was issued, defendant consented to the blood draw. Pursuant to department policy, Kirk Holcomb, a paramedic from the fire department, came over and obtained samples of defendant's blood for testing.[2] The samples were sealed in a mailing box and sent to the Michigan State Police lab for testing.

Monica Bugeja, a scientist in the toxicology unit of the Michigan State Police forensic science lab, was qualified as an expert in her field. She received the blood samples collected by Holcomb on February 25, 2013 and tested them on February 27. There were two samples, one marked as having been drawn at 3:52 a.m., and one marked as having been drawn at 3:53 a.m. Bugeja tested the first sample in two different instruments "[j]ust as a double check." One instrument registered 0.094 grams of alcohol per hundred milliliters of blood, and the other registered 0.095 grams of alcohol per hundred milliliters of blood. Either way, defendant's blood exceeded the legal limit of 0.08 grams of alcohol per hundred milliliters of blood.

After Holcomb testified, but before the prosecutor offered the blood-test results into evidence, defendant objected to their admission on the ground that a proper foundation had not been established in accordance with the nine-part test set forth in *People v Cords*, 75 Mich App 415, 427; 254 NW2d 911 (1977), and that Holcomb was not a person authorized to draw the blood under MCL 257.625a(6)(c). The trial court initially sustained the objection.

The following day, the prosecutor moved for reconsideration, arguing in part that *Cords* and MCL 257.625a(6)(c) both relate to blood drawn under the implied consent statute, whereas defendant's blood was drawn pursuant to a search warrant. The warrant, which stated that the blood sample "be taken pursuant to MCL 257.625a(6)(c)," specifically identified "the Rochester Fire Department, or a licensed physician, or an individual operating under the delegation of a

---

[2] Holcomb, a licensed emergency medical technician and paramedic, testified that he drew samples of defendant's blood in an ambulance and turned them over to Gorman.

licensed physician" as persons authorized to draw defendant's blood. Because a warrant was obtained, MCL 257.625a(6)(c) was inapplicable pursuant to *People v Callon*, 256 Mich App 312, 322-323; 662 NW2d 501 (2003).

Upon reconsideration, the trial court overruled the objection, stating:

Whether or not this Court agrees or disagrees with the analysis of the Court of Appeals is not relevant. What is relevant is whether or not it applies in connection with this case. I do not see how it is distinguishable in a material way from what's before the Court. I agree with the People that they have laid a foundation that this blood draw was taken pursuant to the warrant, the warrant is not materially different than the one that is in the *Callon* case.

Therefore, the question is one of constitutionality of the . . . warrant, and there has really been no challenge with regard to probable cause or the other indicia of reliability, or admissibility, other than the technical requirements, which the Callon case says this court is not to consider, and therefore, I will reverse my ruling and allow the blood draw to be entered.

Defendant was convicted and sentenced as set forth above and she appeals as of right.

## II. ANALYSIS

Defendant first argues that the trial court erred in admitting her blood-test results into evidence because the blood test was not obtained in compliance with MCL 257.625a(6)(c).

We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002). A trial court's decision concerning whether a proper foundation was established for the admission of evidence is also reviewed for an abuse of discretion. *People v Ford*, 262 Mich App 443, 460; 687 NW2d 119 (2004). "[I]t is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003).

A person who operates a vehicle upon the open road "is considered to have given consent to the chemical tests of his or her blood, breath, or urine for the purpose of determining the amount of alcohol . . . in his or her blood or urine or the amount of alcohol in his or her breath" if the person is arrested for a violation of various statutes, including § 625(1). MCL 257.625c(1). "The tests shall be administered as provided in section 625a(6)." MCL 257.625c(3). Section 625a(6)(c) provides in relevant part as follows:

Only a licensed physician, or an individual operating under the delegation of a licensed physician under . . . MCL 333.16215, qualified to withdraw blood and acting in a medical environment, may withdraw blood at a peace officer's request to determine the amount of alcohol . . . in the person's blood, as provided in this subsection.

-3-

At trial, defendant argued that the paramedic who withdrew her blood did not meet that requirement and that other foundational facts had not been established. The trial court initially excluded the evidence, but reversed its ruling and admitted the evidence in light of *Callon*, 256 Mich App at 312. In *Callon*, this Court held that where a defendant refuses a chemical test and her blood is drawn pursuant to a search warrant, § 625a(6)(c) "does not govern admissibility of the test results." *Id.* at 322-323. See also *Manko v Root*, 190 Mich App 702, 704; 476 NW2d 776 (1991) (explaining that "[w]hen a blood sample is taken pursuant to a search warrant, the issue of consent is removed, and the implied consent statute is not applicable.")

Taken together, these cases establish that where, as here, the defendant's blood is drawn pursuant to a search warrant rather than pursuant to the implied-consent statute, the blood need not be drawn by a person designated in § 625a(6)(c).[3] *Callon*, 256 Mich App at 322-323. However, the authentication or identification of evidence is a condition precedent to its admission, MRE 901(a), and when the admissibility of evidence is disputed, "the burden of establishing a proper foundation rests with the party seeking admission." *In re Brock*, 193 Mich App 652, 669; 485 NW2d 110 (1992), rev'd on other grounds 442 Mich 101 (1993). The proper foundation that must be established for admission of blood-test results is that outlined in *Gard v Mich Produce Haulers*, 20 Mich App 402, 407-408; 174 NW2d 73 (1969) and *People v Cords*, 75 Mich App 415, 428; 254 NW2d 911 (1977).[4] Specifically, the following foundational requirements are necessary "for admission of the results of a blood sample analysis" into evidence:

> "[T]he party seeking introduction must show (1) that the blood was timely taken (2) from a particular identified body (3) by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments used were sterile, (5) that the blood taken was properly preserved or kept, (6) and labeled, and (7) if transported or sent, the method and procedures used therein, (8) the method and procedures used in conducting the test, and (9) that the identity of the person or persons under whose supervision the tests were conducted be established." [*Gard*, 20 Mich App at 407-408, quoting *Lessenhop v Norton*, 261 Iowa 44, 52-53; 153 NW2d 107 (1967) (citation omitted).]

Accordingly, we consider whether a proper foundation was established. Of the relevant factors, defendant challenges factors (3) through (7).

---

[3] We reject defendant's claim that her decision to consent to the blood draw after the warrant was obtained somehow nullified the warrant and brought the case back within the ambit of the implied-consent statute. Once the warrant was secured, defendant's blood was to be obtained pursuant to the warrant irrespective of whether defendant consented. Moreover, defendant does not brief the merits of this claim or support it by citation to applicable authority.

[4] The trial court erred to the extent that it held otherwise. However, this Court will not reverse where the trial court reaches the right result for the wrong reason. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 508-509; 741 NW2d 539 (2007).

The search warrant authorized the blood to be drawn by someone from the Rochester Fire Department. The arresting officer, Gorman, testified that the blood is collected and packaged using a standard kit provided by the Michigan State Police. It contains an information form, an iodine packet for cleaning the injection site of a blood draw, vials for blood samples, cups for urine samples, labels for marking the sample containers, and a plastic bag for packaging the labeled containers. Once the samples are collected, the completed information sheet and sample containers are placed in the box and the box is sealed with a special "kit shipping seal." Holcomb, a licensed paramedic, drew the blood from defendant. He testified that his paramedic license is a "medical license that allows [him] to treat people" and qualifies him to draw blood, and that "[b]lood draws are entailed under the paramedic licensure." Holcomb used sterile equipment and sterilized defendant's arm using the iodine packet. The blood flowed directly through the needle into the vials. Once the vials are sealed, they were tipped back and forth several times to distribute a powder throughout the sample. Bugeja, a forensic chemist, testified that the powder consists of two chemical agents, one that prevents clotting and one that acts as a preservative to prevent spoilage. Holcomb gave the filled vials to Gorman, who packaged everything in the box, affixed the seal, and placed it in the collection area for outgoing mail. There was no testimony about the shipping methods used, although Bugeja said the boxes are typically sent by first-class mail. The box sealed by Gorman was delivered to the lab on February 25, 2013. Bugeja testified that the box arrived with the seal intact and defendant's name was on the enclosed information sheet and on the vials. The vials were refrigerated until February 27, when the blood was tested.

These facts and circumstances were sufficient to establish that the blood was drawn from defendant in a sterile manner by a person trained to perform the procedure and that the blood drawn from defendant was the same blood that was tested by Bugeja. Because there was a proper foundation for the admission of the evidence, the trial court did not abuse its discretion in admitting the blood test results.

Defendant next argues that there were two errors with respect to her sentencing. First, defendant argues that the trial court did not properly respond to a challenge to the accuracy of the presentence report, which indicated that she had a pending charge in district court for driving with a suspended license. Specifically, the first page of the presentence report contains a space for information regarding pending charges. It indicated that defendant had a pending charge of driving with a suspended license in the 52-4 District Court, LC No. 13-005684, for an incident that occurred on December 12, 2013. This information was repeated in the section detailing defendant's criminal history.

At sentencing, defense counsel explained that defendant came to be charged with the offense because her conviction in this case was incorrectly reported by the circuit court, apparently causing her license to be suspended. The error in the reporting of her conviction had been corrected and thus defendant expected that the pending charge would be resolved in her favor when she appeared in the district court. However, the fact that defendant had an explanation for, and defense to the pending charge, did not mean that she did not have a pending charge. Thus, there was no challenge to resolve.

Second, defendant contends that the $500 fine included in the judgment of sentence should be stricken because it was not ordered by the trial court at sentencing. However, the

sentencing transcript clearly indicates that, among other fees, the trial court ordered defendant to pay "a fine of five hundred dollars ($500.00)." Thus, there is no merit to defendant's argument that the trial court never actually imposed a $500 fine.

Affirmed.

/s/ Joel P. Hoekstra
/s/ David H. Sawyer
/s/ Stephen L. Borrello