Richard S. Heller, J.
This is a claim for the unlawful death of claimant’s intestate alleged to have been caused through the negligence of the Hew York State Thruway Authority. The claim was duly filed and has not been assigned.
At the trial the court reserved decision on objections taken by claimant’s counsel to the admission into evidence of the analysis of a blood sample taken after death showing the presence of alcohol in the blood of the deceased.
The State trooper who investigated the accident accompanied the body of the deceased to an undertaking parlor and requested the undertaker to take a blood sample. The undertaker did take a blood sample according to the testimony of the trooper. The blood was extracted by a hypodermic needle and placed into a clean container containing an anticoagulant and it was then sent to the State Police laboratory for analysis. The attempt to introduce the results of this analysis was met by objections.
It appears the procedure used in this case indicates a violation of constitutional rights.
The court is unable to find any statutory provision which allows a police official to act in the manner that was followed here. Without statutory approval the investigating officer and the active participant might possibly subject themselves to a violation of section 2214 of the Penal Law or to a civil suit as outlined in Diebler v. American Radiator & Std. Sanitary Corp. (196 Misc. 618) and Beller v. City of New York (269 App. Div. 642). *1080 Without condoning the practice here, even condemning it as a possible unlawful invasion of constitutional rights, the court must receive the results of this test into evidence if it is properly advanced. (People v. Richter’s Jewelers, 291 N. Y. 161.)
The Legislature of the State of New York has prescribed certain requirements for the taking of blood samples. In every instance it has been required that the sample be taken by qualified technicians as follows: physician (Vehicle and Traffic Law, § 71-a); duly licensed physician (Code Grim. Pro., § 684-a); duly licensed physician (Domestic Relations Law, § 13-a); health officer or physician (Public Health Law, § 2300); physician (Public Health Law, § 2308, subd. 1); duly licensed physician (Public Health Law, § 2308, subd. 2). Even the testing of an animal requires a competent and authorised veterinarian (Agriculture and Markets Law, § 90).
Here the blood sample was taken by a person who did not appear at the trial to explain what he did or whether he was qualified to act. If the taking of a blood sample is as simple as the State implies, the court is at a loss to understand the elaborate safeguards approved by the Legislature.
The objections of claimant’s attorney are sustained and the evidence of the blood analysis is rejected by the court upon the ground that the foundation laid for its admission is insufficient.
James Murphy, aged 45, was killed shortly after noon on September 28,1956, when his car left the New York State Thruway while traveling south at a point approximately one mile north of the Route 17 bridge in Rockland County, New York. After leaving the highway, the car driven by the deceased struck the north end of a guide rail and was propelled into a gully on the western side of the highway.
There were no witnesses to the accident. From all of the evidence the court finds that the deceased was traveling southerly on a six-lane concrete highway with the lanes divided by broken white lines. It was cloudy and the pavement was wet, visibility was good and the sight distance of the guide rail was between one-eighth and one-quarter mile.
While traveling along a long gradual curve which could be negotiated at the maximum speed allowed without any difficulty, the ear driven by James Murphy failed to follow the curve of the road. Instead, it turned off at an angle to the southwest in a straight line, struck the guide rail and went into the gully. The car was demolished and the driver was killed.
The contention of the claimant is that the Thruway Authority was negligent in failing to extend the guide rail further to the north of the point of impact. The court finds that the guide *1081 railings were placed in accordance with good engineering practice to protect against a foreseeable hazard and that to follow claimant’s reasoning would impose a burden not contemplated in providing a safe highway for a reasonably prudent driver. (Jacobs v. State of New York, 276 App. Div. 452.)
It is the duty of the State to erect proper and sufficient barriers at dangerous places on the highway to provide a safe highway for the driver using ordinary care. (Feron v. State of New York, 60 N. Y. S. 2d 124, affd. 271 App. Div. 914.) It is not necessary to maintain barriers where a dangerous or unusual condition does not exist. (Dorrer v. Town of Callicoon, 183 App. Div. 186; Best v. State of New York, 203 App. Div. 339, affd. 236 N. Y. 662.)
Noting the foregoing decisions the court is mindful that the Thruway is a modern high-speed highway and that the Authority must maintain the road, shoulders and right of way in such a manner as to provide a safe and convenient highway for travelers using ordinary care. That degree of care must meet the challenge of greater speed, increased traffic and wider paved sections which necessarily add new hazards to the proper care and maintenance of this highway.
The erection of an additional section of a barrier could not have prevented this accident. The driver here merely left the road instead of following the paved portion. An accident of some sort was inevitable but the result cannot be attributed to any negligence on the part of the Thruway Authority. (See Jacobs v. State of New York, 198 Misc. 406.)
The motion made by the Attorney-General at the close of the case for dismissal upon which decision was reserved is granted and the claim is dismissed.