STATE, Respondent v. GUTHRIE, Appellant

(180 N.W.2d 143)

(File No. 10735. Opinion filed October 9, 1970)

**Joseph H. Bottum, III,** Pierre, for appellant.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, for respondent.

RENTTO, Judge.

Defendant was convicted of operating a motor vehicle while under the influence of alcoholic liquor. From the judgment and sentence entered thereon he appeals.

Because of the way defendant operated his car on the streets of Murdo, South Dakota, about 1 a. m. on May 2, 1968, he was stopped by a state motor patrolman and upon investigation was arrested on the charge of which he was convicted. The patrolman took him to the sheriff's office where defendant, after talking to his counsel by phone, indicated that he would submit to the requested chemical analysis of his blood. Arrangements for taking a blood sample were made with a local doctor. For that purpose they went to the hospital in Murdo. In the record, the one who withdrew the blood is referred to as Doctor Stevens. There is no showing by prefix of letters or otherwise to indicate that he is a medical practitioner.

Defendant urges three assignments of error, but they are all bottomed on his claim that a proper foundation had not been established for admitting in evidence the result of a chemical test performed upon blood taken from him. His specific complaint is that there is no proof that the specimen tested was a true sample of his blood because of a failure to show that it was withdrawn in an approved manner.

While the patrolman testified that the defendant was under the influence of alcohol, the observations on which he based such opinion were minimal and contradicted by other evidence. The strong evidence of intoxication was the chemical test of his blood, testified to by the state chemist, which showed it to contain 0.19% by weight of alcohol. SDCL 32-23-7(3) provides that a defendant, in a prosecution of this kind, is presumed to be under the influence of intoxicating liquor if the alcohol content of his blood was 0.15% or more by weight. The jury was so instructed.

Concerning the taking of blood samples for that purpose, SDCL 32-23-14 provides:

"Only a physician, laboratory technician, or medical technician or medical technologist acting at the request of a law enforcement officer can with-

> draw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of a urine, breath or other bodily substance specimen."

No doubt this restriction serves the dual purpose of protecting the well-being of the one from whom the blood is being taken and the reliability of the specimen. In Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, it is intimated that a blood sample taken in an unskilled manner might be offensive to due process.

Doctor Stevens was not called as a witness. The patrolman testified that the doctor withdrew the blood and put it into a tube which the patrolman furnished him. It was then sealed and identifying marks placed thereon by the patrolman and by him stored in a refrigerator in the sheriff's office. The following day, after packing it in a paper container, he mailed it to the State Chemical Laboratory. The record is silent as to the manner in which the needle and the syringe used in withdrawing the blood were sterilized and as to how the area on the defendant's arm where the blood was taken was disinfected.

Authorities in this field seem agreed that in withdrawing blood for use in chemically determining its alcoholic content the skin, syringe, and needle should be disinfected and sterilized. They are also agreed that the use of alcohol, an alcohol preparation, or carbolic acid for these purposes could affect the reliability of the analytical results as to the amount of alcohol in the suspect's blood. These precautions are essential to the obtaining of a clean, safe blood specimen. See articles by Mason Ladd and Robert B. Gibson, 24 Iowa L. Rev. 191, 29 Va.L.Rev. 749. Also XIII, New York Law Forum 612; and Chemical Tests and the Law by Robert L. Donigan, pp. 60-61. This latter work is published by the Traffic Institute—Northwestern University and treats the legal aspects of and constitutional issues involved in chemical tests to determine alcoholic influence.

The validity of this view finds support in the expert testimony of the state chemist. While he defended the ac-

curacy of his analysis of the blood sample which he received, he conceded that without knowing what safeguards were used in its extraction he could not state that his analysis reflected the true condition of the blood in the body of the defendant when the specimen was taken.

█ In American Jurisprudence, Proof of Facts—Concentration of Alcohol in Blood, Vol.2, p. 600, we find this comment:

> "It is important to establish that the needle, syringe, and container used were sterilized by means of dry heat, boiling, or steam, thus showing impossibility of introduction of alcohol into the blood specimen through the sterilizing agent. A similar showing should be made with respect to the cleansing of the skin. The agent in that case should be a mercury bichloride solution or cake soap and water."

The burden of establishing that nothing was added to the blood sample in its taking which would affect the accuracy of the test to be made of it, is on the prosecution. 159 A.L.R. 209, 21 A.L.R.2d 1219; Wharton's Criminal Evidence, 12th Ed., Vol. 2, § 664. This is a part of the required foundation. In some jurisdictions it has been made statutory. See Lessenhop v. Norton, Iowa, 153 N.W.2d 107; Brush v. Commonwealth, 205 Va. 312, 136 S.E.2d 864.

In overruling defendant's objection to the admission of the blood sample and the state chemist's analysis of it, the court did so on the theory that in the absence of testimony to the contrary there exists a presumption that a medical doctor taking the blood sample has done so in a sterile and proper manner. Assuming without deciding that such presumption is valid in certain circumstances, it is not here applicable. As stated above the record does not indicate or establish that Doctor Stevens was a medical doctor. Nor does it appear that he is a person authorized by SDCL 32-23-14 to withdraw blood for the purpose of determining the alcoholic content therein.

█ We therefore hold that a sufficient foundation had not been established for admitting in evidence the blood

sample and the result of its analysis. Murphy v. New York State Thruway Authority, 23 Misc.2d 1078, 204 N.Y.S.2d 953. In a criminal prosecution the accused is not required to establish his innocence. That is presumed until the contrary is proved beyond a reasonable doubt. SDCL 23-44-5. Our holding is in keeping with this basic concept of our criminal law.

Accordingly we are of the view that the court erred to the defendant's prejudice in admitting in evidence the blood sample and the analysis of it, thus permitting the jury to consider the statutory presumption.

Reversed.

All the Judges concur.