STATE of Minnesota, Respondent,

v.

Lee Brian DILLE, Appellant.

No. 46123.

Supreme Court of Minnesota.

Aug. 19, 1977.

Stewart R. Perry, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Schieffer & Carson and Jeffrey A. Carson, Minneapolis, for respondent.

Heard before KELLY, TODD and WINTON, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant appeals from the judgment of conviction entered in Crystal Municipal Court for driving with a blood alcohol content of .10 percent or more and for careless driving.

At 8 p. m. on December 30, 1974, two Hennepin County deputy sheriffs observed defendant's vehicle proceeding at an unusual rate of speed from a stop sign. Defendant admitted he executed a rolling stop and then "tromped on it." The officers followed defendant and gauged his speed at 70 miles per hour in a 50-miles-per-hour posted zone. Before they stopped defendant, the officers twice observed him drive his right wheels onto the unimproved shoulder of the two-lane, asphalt county road. After stopping defendant, one officer detected the odor of alcohol on defendant's breath and red veins in the whites of his eyes, and both officers observed that defendant had some initial difficulty in standing. The officers administered a portable breath screening test and arrested defendant. Defendant was advised of his rights and elected to take a blood test, which was administered at North Memorial Hospital. Analysis of the blood sample revealed an alcohol content of .226 percent. Defendant essentially conceded these facts and testi-

fied that he had had three beers at his girlfriend's house before the arrest and that he was suffering from lack of sleep and was emotionally upset because of difficulties in his relationship with his girlfriend.

Five charges were submitted to the jury: (1) Driving while under the influence of an alcoholic beverage; (2) driving with a blood alcohol content of .10 percent or more; (3) careless driving; (4) speeding; and (5) failure to stop at a stop sign. The jury found defendant not guilty of driving under the influence but guilty of the other four charges. The court dismissed the two latter charges as lesser included offenses and sentenced defendant to 30 days in the workhouse.

Three issues are presented on this appeal:

(1) Did the trial court err in permitting the blood test results to be received into evidence?

(2) Did the trial court abuse its discretion in restricting the scope of cross-examination of the prosecution's expert witness?

(3) Did the evidence fail to establish the offense of careless driving?

1. Defendant argues that the trial court erred in receiving into evidence the results of the blood test because no proper foundation was laid with respect to the test's reliability in this instance. Minn.St. 169.-121, subd. 2, provides that in prosecutions for driving while under the influence, "the court may admit evidence of the amount of alcohol in the person's blood, breath, or urine as shown by a medical or chemical analysis thereof * * * ." Minn.St. 169.-123, subd. 3, further provides: "Only a physician, medical technician, registered nurse, medical technologist or laboratory assistant acting at the request of a peace officer may withdraw blood for the purpose of determining the alcoholic content therein * * ." Defendant concedes that a proper person, a medical technologist, performed the test, but he argues that insufficient foundation was laid to permit introduction of the test results.

The proponent of a chemical or scientific test must establish that the test itself is reliable and that its administration · in the particular instance conformed to the procedure necessary to ensure reliability. *State v. Gerdes*, 291 Minn. 353, 191 N.W.2d 428 (1971) (radar);[1] *State v. McDonough*, 302 Minn. 468, 225 N.W.2d 259 (1975) (radar); *State, City of St. Louis Park v. Quinn*, 289 Minn. 184, 188, 182 N.W.2d 843, 845 (1971) (breathalyzer); McCormick, Evidence, (2d ed.) § 209, p. 513. Without a foundation guaranteeing the test's reliability, the test result is not probative as a measurement and hence is irrelevant. Defendant contends that the analysis of his blood was faulty in five respects.

First, defendant correctly asserts that there was no direct evidence presented that the needle and bottle used to collect defendant's blood sample were sterilized. The medical technologist who administered the test did not personally sterilize the equipment, and a successful hearsay objection prevented further testimony as to sterilization. The technologist did testify, however, that the needle had never been used before,

---

1. In *Gerdes,* this court examined the admissibility of radar results in a prosecution for speeding. The court found it proper to take judicial notice of the reliability of radar equipment in general, but found insufficient proof of the reliability of the equipment in question because it had not been tested by external means, and therefore reversed the conviction. The court stated: "The requisite conditions for proving the accuracy of a particular instrument sufficient to support a conviction are:

"(1) The officer reading the device must have adequate training and experience in its operation;

"(2) The officer should testify to the manner in which the unit was set up and the conditions under which it was used;

"(3) A showing must be made that the machine was operated with a minimum possibility of distortion from such external interference as noise, neon lights, high-tension powerlines, high power radio stations, and other similar influences; and

"(4) On the occasion when the machine is set up, its accuracy must be tested in some external manner by a reliably calibrated tuning fork or by an actual test run, using another vehicle with an accurately calibrated speedometer." *State v. Gerdes,* 291 Minn. 353, 359, 191 N.W.2d 428, 432 (1971).

that a different needle is used on each patient, and that the needles are disposed of after use. Defendant, relying on *State v. Guthrie*, 85 S.D. 228, 180 N.W.2d 143 (1970), argues that the state has the burden to prove that equipment used in administering the test was sterile and that the blood sample was not contaminated by the test. The court in *Guthrie* was not concerned with sterilization so much as with freedom from contamination:

" * * * The record is silent as to the manner in which the needle and syringe used in withdrawing the blood were sterilized and as to how the area on the defendant's arm where the blood was taken was disinfected.

"Authorities in this field seem agreed that in withdrawing blood for use in chemically determining its alcoholic content the skin, syringe, and needle should be disinfected and sterilized. They are also agreed that the use of alcohol, an alcohol preparation, or carbolic acid for these purposes could affect the reliability of the analytical results as to the amount of alcohol in the suspect's blood. These precautions are essential to the obtaining of a clean, safe blood specimen." 85 S.D. 230, 180 N.W.2d 144.

In *Guthrie,* the prosecution thus failed to carry its burden of establishing that the blood sample had not been contaminated by substances that would affect the accuracy of the test, and the defendant's conviction was reversed.

■ We agree that the prosecution has the burden to prove that contaminants have not adversely affected the reliability of the test. In this case, however, sufficient indicia of reliability in the testing process were present so as not to preclude admissibility on this ground. The blood sample was taken in a hospital by a medical technologist with a needle that was kept with other equipment for drawing blood, and that had not been used before. In these circumstances, the prosecution established prima

facie proof of the trustworthiness of the test's administration.

Second, defendant points to testimony indicating the presence of a "white chemical" in the sample bottle. The nature and identity of this chemical was never explained by the prosecution. The bottle and its contents, however, were furnished to police officers by the state Bureau of Criminal Apprehension as part of a regular procedure.

In *State v. Erdman,* 64 Wash.2d 286, 391 P.2d 518 (1964), the Washington Supreme Court confronted a similar situation. In that case, a small amount of white powder, not specifically identified by direct evidence, was present in the blood sample bottle. The court, noting that it was the state's burden to prove that the white powder could not have affected the test results, found:

"In the present case the testimony that the general practice was to place sodium fluoride in all bottles prepared for blood samples, coupled with the testimony of the chief toxicologist that no inaccuracies were detected, constituted prima facie proof as to the identity of the powder and the consequent accuracy of the blood-alcohol test. With this established, some burden must be placed upon the defendant to come forward with some proof, evidence or indication that impugns the accuracy of the test." 64 Wash.2d 288, 391 P.2d 519.

■ Although it would have been desirable if the prosecution had identified the substance and had disclosed its effect on the accuracy of the test, the fact that the bottle and its contents were furnished as a blood-testing kit by the Bureau of Criminal Apprehension provided a sufficient indicium of reliability to establish the prima facie admissibility of the test results. It was then incumbent upon defendant to suggest a reason why the blood test was untrustworthy.[2]

---

**2.** This burden is not unconstitutional so long as the presumption that a blood-testing kit contains no contaminants satisfies due process requirements. See, generally, McCormick, Evi-

dence (2 ed.) §§ 344, 346. Since state provision of the blood-testing kit would be sufficient for a rational juror to find the presumed inference beyond a reasonable doubt, the requirements of

■ Third, defendant argues that it was necessary to introduce the vial of the blood sample itself into evidence.[3] Essentially, defendant suggests that without introduction of the vial, the authentication of the test results was incomplete. Generally, courts have not required the production of the analyzed sample at trial. Donigen, Chemical Tests and The Law (2 ed.) p. 80. The case relied on by defendant, *Novak v. District of Columbia*, 82 U.S.App.D.C. 95, 160 F.2d 588 (1947), is readily distinguishable. The court there held that introduction of a urine bottle was essential to establish that the test results related to the sample of urine defendant had provided. No evidence linked the police officer's collection of the sample and the bottle containing the sample analyzed. See, *Gass v. United States*, 135 U.S.App.D.C. 11, 13, 416 F.2d 767, 769 (1969). In the instant case there was no such break in the chain of custody—all handlers of the sample from its procurement to its analysis testified at trial. See, generally, Annotation, 21 A.L.R.2d 1216.

■ Fourth, defendant complains that the chemical method utilized in this case (the Cavette method) fails to distinguish between alcohol produced by ingestion, alcohol produced by acetone present in the body because of certain diseases, and alcohol produced by other chemical reactions. Absent a showing by defendant that the alcohol present in his system was produced by one of these other causes, the reliability of the test in question was not sufficiently impugned to require its exclusion. Indeed, the record fails to indicate that any other blood test would distinguish alcohol by its origin.

■ Finally, defendant argues that it was insufficient to make only one analysis of defendant's blood sample because of the chance of error in any single test. Al-

though it might be a preferred practice to run duplicate tests, the failure to do so in this case is not a sufficient reason to exclude the test results. The chemist who analyzed the sample had worked for the Minnesota Public Health Department for 4 years. He testified that he ran a control along with the sample and also checked the concentration of the solution against which the sample was analyzed. He stated that by using this procedure "there is very little chance of error." He also testified that the margin of error in his test results was plus or minus .01 percent. Under these circumstances, the possibility of error in the test results is a matter for the jury to consider in its evaluation of the test's reliability. Therefore, the test results were properly admitted.

2. Defendant's attorney asked the state's chemist on cross-examination whether he had participated in United States Department of Transportation (DOT) survey in September 1974 in which blood samples were sent to various laboratories throughout the country for analysis of alcohol content. Upon the chemist's affirmative answer, the prosecution objected to this line of questioning as improper cross-examination. The court sustained the objection without explanation. The DOT survey apparently revealed that different laboratories reached a wide range of results in analyzing the same blood sample.

■ The scope of cross-examination is largely left to the discretion of the trial judge, whose ruling will not be overturned unless his discretion was clearly abused. *E. g., Klingbeil v. Truesdell,* 256 Minn. 360, 98 N.W.2d 134 (1959). Defendant argues, however, that the DOT survey is material and significant since it tends to show the unreliability of the Cavette method. Because the reliability of the blood test essen-

---

due process have been satisfied. See, *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). See, also, *State v. Reps*, 302 Minn. 38, 223 N.W.2d 780 (1974). The burden of persuading the jury that the test results were accurate remains with the prosecution.

3. To the extent the argument is based on the best evidence rule, it is unpersuasive. *Hayes v. State*, 397 P.2d 524, 527 (Okl.Cr.App.1964). The blood sample may be the "best evidence" of its alcohol content, but without a chemical analysis the vial of blood is rather uninformative.

**570**

tially is determinative of the guilt for the offense of driving with a blood alcohol content of greater than .10 percent, discrediting the reliability of the test arguably is as significant as demonstrating bias on the part of an adverse witness. See, *State v. Elijah,* 206 Minn. 619, 289 N.W. 575 (1940). But because the results of the DOT survey apparently were based on tests administered in different laboratories and not from a series of tests at one laboratory, the probative value of the study is limited. Given the cogency of raw statistics, the jury might have assigned the results of the DOT survey undue weight in their deliberations. This danger of prejudice might reasonably be seen as outweighing the study's probative value. Therefore, the trial court did not abuse its discretion in restricting the scope of this cross-examination. We note that in other respects the defense was permitted to conduct a thorough cross-examination of the chemist.

3. The jury found defendant guilty of careless driving.[4] Defendant argues that the evidence is insufficient to support that verdict as a matter of law. He concedes, however, that he made a rolling stop at the stop sign and then "tromped on it." One of the deputy sheriffs testified that because buildings obstructed the view from the intersection, "[i]n order to check traffic * * *, a party would have to make a complete stop at the very edge of the intersection and then look both ways, otherwise it would be impossible to see a vehicle coming * * * on that road." Moreover, defendant then drove 70 miles per hour in a 50-miles-per-hour zone, permitting half his car to leave the roadway twice. In these circumstances, the evidence is sufficient to sustain the jury's verdict. See, *State v. Tereau,* 304 Minn. 71, 74, 229 N.W.2d 27, 29 (1975) (the standard for careless driving is proof of ordinary negligence beyond a reasonable doubt); *City of St. Paul v. Olson,* 300 Minn. 455, 456, 220 N.W.2d 484, 485 (1974) ("the act of unrea-

sonable acceleration does fall within the general prohibition contained in § 169.13, subd. 2, against careless driving").

Because no error occurred below, defendant's conviction must be affirmed.

Affirmed.

---

4. Minn.St. 169.13, subd. 2, defines the offense of careless driving: "Any person who shall operate or halt any vehicle upon any street or highway carelessly or heedlessly in disregard of the rights or the safety of others, is guilty of a misdemeanor."