STATE of Minnesota, Respondent,

v.

Scott MOGLER, Appellant.

No. A05–1037.

Court of Appeals of Minnesota.

July 25, 2006.

Mike Hatch, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and Charles C. Glasrud, Special Assistant Pope County Attorney, Morris, MN, for respondent.

Robert J. Fowler, Fowler Law Firm, L.L.C., Little Canada, MN, for appellant and for amicus Minnesota Fraternal Order of Police.

Considered and decided by LANSING, Presiding Judge; WILLIS, Judge; and HUSPENI, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

LANSING, Judge.

Scott Mogler challenges the constitutionality of the phrase "position of authority," as used in Minn.Stat. § 609.344, subd. 1(e) (2002), and defined in Minn. Stat. § 609.341, subd. 10 (2002). He also appeals the district court's evidentiary rulings, venue determination, jury instructions, and imposition of the guidelines sentence; challenges the sufficiency of the evidence to support his conviction of third-degree criminal sexual conduct; and alleges prosecutorial misconduct. Because the definition of "position of authority" that is incorporated into Minn.Stat. § 609.344, subd. 1(e), is not unconstitutionally vague, the evidence supports the conviction, the prosecutor's comments were not misconduct, and the district court did not err or abuse its discretion, we affirm the conviction and sentence.

## FACTS

In the summer of 2004, Scott Mogler was a police officer employed by the city of Starbuck to perform community policing. In this capacity, which involves establishing a presence in the city and establishing a rapport with community residents, Mogler met seventeen-year-old RL and became acquainted with her and a number of her friends through a series of brief conversations around town, usually in the evening. During these encounters Mogler was driving a squad car and in uniform.

Mogler let RL ride in his squad car, and they exchanged cell-phone numbers and phone calls. On July 4, 2004, Mogler and RL arranged to meet at the beach. Mo-

Minn. Const. art. VI, § 10.

gler drove to the beach in his squad car. He was on duty and wearing his uniform, including a badge and service weapon. After meeting at the beach, Mogler drove RL in the squad car to the city-council building, which also serves as the police station. Mogler and RL had sexual intercourse in a conference room at the police station. A few days later Mogler and RL agreed to meet again. Mogler drove his squad car to the prearranged meeting place. He was on duty and in full uniform. Mogler and RL had sexual intercourse in RL's car.

RL testified that, before the first incident of sexual intercourse, she had joked around with Mogler and told him she was older than her true age. Mogler, who was thirty-one in the summer of 2004, told RL that he knew she was only seventeen because he had conducted a background check on her.

RL's father learned of the incidents and, on July 7, 2004, notified the Pope County Sheriff's office. Her father said that he believed one of the incidents occurred in Mogler's squad car. The sheriff notified Starbuck's police chief, Hal Henning. In deference to a request from RL's family, Henning agreed to delay the investigation for a day or two, but to preserve any potential evidence in Mogler's squad car, he arranged to trade vehicles with Mogler. Henning testified that, when he informed Mogler of the trade, Mogler became "very nervous" and asked to discuss something with Henning. Mogler inquired whether he was in trouble with the sheriff's office. Henning said he was not aware of any problems, and Mogler then said that he had "f——d up" and that his career was over. When asked what he had done, Mogler said he had "messed around" with a girl while on duty. He told Henning that he had thought she was nineteen years old but then acknowledged that he knew she was only seventeen.

Following this conversation, Henning advised a deputy to contact RL. RL confirmed the sexual nature of their relationship, and the deputy then arrested Mogler. Henning and the deputy accompanied Mogler to his home to allow him to change out of his uniform. While at his house, Mogler awakened his wife and told her that he was going to jail because he had been "messing around with an underage girl."

The state charged Mogler with two counts of third-degree criminal sexual conduct under Minn.Stat. § 609.344, subd. 1(e) (2002). Mogler moved to dismiss the charges, to suppress the statements he made to his wife and Henning, and to change venue because of pretrial publicity.

The district court denied the motions and, following a trial, a jury convicted Mogler of both counts. In May 2005 the district court sentenced Mogler to eighteen months in prison on the first count and twenty-three months on the second count, to be served concurrently. The court stayed execution of the sentences, ordered Mogler to serve six months in jail, placed him on probation for a period of up to five years, and imposed a $3,000 fine.

In this appeal from conviction and sentencing, Mogler raises eight issues. The Minnesota Fraternal Order of Police, the local chapter of a national organization of police officers, has submitted an amicus brief in support of Mogler's appeal, addressing the interpretation of "position of authority."

## ISSUES

I. Is "position of authority," as used in Minn.Stat. § 609.344, subd. 1(e) (2002), and defined in Minn.Stat. § 609.341, subd. 10 (2002), unconstitutionally vague?

II. Did the district court err by denying a motion to suppress statements made by the defendant to his public employer and statements made to his wife in the presence of two officers while in custody?

III. Did the district court err by denying a motion for change of venue based on pretrial publicity?

IV. Did the district court abuse its discretion by limiting the defendant's cross-examination of the minor?

V. Did the county attorney engage in prosecutorial misconduct during closing arguments?

VI. Did the district court abuse its discretion by excluding part of the definition of "position of authority" in Minn. Stat. § 609.341, subd. 10, from the jury instructions?

VII. Is the evidence sufficient to support the jury's finding that an on-duty police officer was in a position of authority over a minor with whom he had a sexual relationship?

VIII. Did the district court abuse its discretion by failing to account for mitigating factors at sentencing?

## ANALYSIS

### I

■ Minnesota statutes are presumed constitutional. *State v. Barker*, 705 N.W.2d 768, 771 (Minn.2005). A party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision. *Id.* Due process requires that a penal statute define a criminal offense with sufficient definiteness so "ordinary people can understand what conduct is prohibited" and the statute "does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *State v. Krawsky*, 426 N.W.2d 875, 878 (Minn.1988). The doctrine is based on fairness and is not designed to "convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). When First Amendment freedoms are not involved, vagueness challenges must be examined in light of the defendant's actual conduct. *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975); *State v. Christie*, 506 N.W.2d 293, 301 (Minn.1993). The defendant must show that the statute lacks specificity as to his own behavior and not some hypothetical situation. *Christie*, 506 N.W.2d at 301.

■ The third-degree criminal-sexual-conduct statute prohibits sexual penetration involving a minor who is at least sixteen years old but younger than eighteen and a person who is more than forty-eight months older than the minor and is in a position of authority over the minor. Minn.Stat. § 609.344, subd. 1(e) (2002).

"Position of authority" includes but is not limited to any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities to a child, or a person who is charged with any duty or responsibility for the health, welfare, or supervision of a child, either independently or through another, no matter how brief, at the time of the act. For the purposes of subdivision 11 [of section 609.341], "position of authority" includes a psychotherapist.

*Id.* § 609.341, subd. 10 (2002). Consent and mistake of age are not defenses to

third-degree criminal sexual conduct. *Id.* § 609.344, subd. 1(e).

Mogler argues that the definition of "position of authority" is so broad that the state could consider anyone to be in a position of authority, or, alternatively, that the definition does not clearly provide fair warning that it includes a police officer. We disagree.

The statute defining "position of authority" lists three examples of persons in a position of authority: a parent; a person charged with the responsibilities of the parent; and a person charged with any duty or responsibility for the health, welfare, or supervision of the child. *Id.* § 609.341, subd. 10. The plain meaning of the words in the phrase "position of authority" provides additional guidance on the types of people encompassed in the statutory definition. "Position" indicates either a person's social standing or employment while "authority" refers to the "power to enforce laws, exact obedience, command, determine, or judge." *American Heritage Dictionary* 121, 1369 (4th ed. 2000). The statutory definition of "position of authority" includes a person who is charged with any duty or responsibility for the health, welfare, or supervision of a child. An ordinary person would reasonably understand that an on-duty police officer has a duty or responsibility for the welfare of a seventeen-year-old child that would place the officer in a position of authority over the child.

Mogler attaches significance to the last sentence of the definition of "position of authority," which states, "For the purposes of subdivision 11 [of section 609.341], 'position of authority' includes a psychotherapist." He argues that the specific reference to a psychotherapist, by inference, excludes police officers from the definition. This argument is unpersuasive for two reasons. First, Minn.Stat. § 609.341, subd. 11 (2002), defines sexual contact as used in sections 609.343 and 609.345, which relate to second- and fourth-degree criminal sexual conduct. It does not apply to Mogler's charge of third-degree criminal sexual conduct under Minn.Stat. § 609.344. Second, the statutory definition of "position of authority" is prefaced with an express statement that it "includes but is not limited to" the specific examples listed. *See State v. Larson*, 520 N.W.2d 456, 461 (Minn.App. 1994) (stating that position-of-authority definition "does not contain an exclusive list of persons in position of authority"), *review denied* (Minn. Oct. 14, 1994).

The coordinate elements of Minn.Stat. § 609.344, subd 1(e), narrow the scope of the statute and provide warning of the conduct it proscribes. Section 609.344 limits the scope of the statute by restricting it to specific age groups. The statute applies only when the minor is sixteen or seventeen years old and the offender is more than forty-eight months older and is in a position of authority. The statute also requires that the person be in a position of authority "over" the minor. Mogler argues that the jury's request that the district court further clarify this standard establishes vagueness. We disagree. "Over" is a common preposition that connotes relativity. *See American Heritage Dictionary* 1252 (defining "over" as "[i]n or at a position above or higher than" and "[i]n a position to rule or control"). Minn. Stat. § 609.344, subd. 1(e), plainly requires that the offender be in a position of authority relative to the position of the minor.

Mogler's final arguments on the issue of vagueness relate to a statutory change and to his contention that police do not function in a position of authority at all times. In 1998 the Minnesota legislature eliminated from section 609.344, subdivision 1(e), the requirement that the state prove that a

person in a position of authority used the authority in committing the offense. 1998 Minn. Laws ch. 367, § 9, at 707. Mogler contends that the elimination of this requirement resulted in ambiguity in the definition of "position of authority." But the amendment did not affect the meaning of "position of authority." A person who was in a position of authority before the amendment remains in a position of authority under the amended statute. Mogler's true ground of objection appears to be directed at legislative policy, not constitutional due process.

Although Mogler argues that Minn.Stat. § 609.341, subd. 10, cannot be read to create a rule that a police officer is always in a position of authority, he acknowledges that an officer could be in a position of authority over a minor if the minor is in custody or is suspected of a crime. This concession undercuts his constitutional argument and suggests that his central assertion is not the vagueness of the statute but the insufficiency of the evidence. We acknowledge that hypothetical situations may exist in which application of section 609.344, subdivision 1(e), would present a closer question; on these facts, however, we do not reach the issue of whether a police officer is always in a position of authority. Mogler has not argued that his conduct is protected by the First Amendment and consequently his vagueness challenge is limited to whether it lacks sufficient specificity as to his own behavior, not to a hypothetical situation. *See Christie,* 506 N.W.2d at 301 (stating that vagueness challenge that does not implicate First Amendment is reviewed in light of applicable facts).

In its amicus brief the Minnesota Fraternal Order of Police raises three arguments addressing the meaning of "position of authority." The organization first suggests that the public-duty doctrine, which states that police officers owe a duty to the public rather than an individual, limits the definition of position of authority. This argument is not supported by the cases cited as authority because they relate to civil liability for police officers, not criminal liability for a police officer's direct act.

■ The organization next suggests that a determination that a police officer is always in a position of authority will establish dangerous precedent because it will infringe on the ability of younger police officers to have sexual relationships with another young person who would be able to legally consent except for the prohibition in Minn.Stat. § 609.344, subd. 1(e). Without accepting or rejecting the validity of this expressed concern, we emphasize that our rejection of Mogler's vagueness challenge is based on the facts of this case, not on the principle that an officer is always in a position of authority. Mogler was on duty and in uniform when he interacted with RL, and his job involved interacting with community residents. To the extent that the organization's argument is directed at the statute itself, that challenge is properly addressed to the legislature, not the judiciary. Minnesota is a "code state," and the responsibility of defining what constitutes a crime is the exclusive province of the legislature. *State v. Soto,* 378 N.W.2d 625, 627 (Minn.1985).

Finally, the organization points to *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), and suggests that Mogler was denied his constitutional right to engage in conduct protected by the Fourteenth Amendment. *Lawrence* is readily distinguished because it involved two consenting adults, not an adult and a minor. *Id.* at 564, 123 S.Ct. at 2476. Further, although Minn.Stat. § 609.344, subd. (1)(e), may treat Mogler differently from persons in other occupations, he is not being treated differently from similarly sit-

uated persons. The statute distinguishes between persons based on whether a person is in a position of authority, and the state has a rational basis for making this distinction.

Because the term "position of authority" in Minn.Stat. § 609.344, subd. 1(e), is neither so broad that an ordinary person could not understand what conduct it proscribes nor so narrow that it cannot include a police officer, we hold that the statute is not unconstitutionally vague.

## II

■■ In a pretrial hearing at which a defendant seeks to suppress a confession on the basis that his statements were involuntary, the state must prove by a fair preponderance of the evidence that the statements were voluntary. *State v. Thaggard,* 527 N.W.2d 804, 807 (Minn.1995). We review the district court's factual findings under a clear-error standard. *State v. Buchanan,* 431 N.W.2d 542, 552 (Minn. 1988). Based on these findings, we determine independently whether the confession was voluntary. *Thaggard,* 527 N.W.2d at 807.

■ Mogler argues that his statements to Henning are protected by *Garrity v. New Jersey,* which held that, in subsequent criminal proceedings, the Fourteenth Amendment prohibits using statements obtained under threat of removal from public employment. *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). *Garrity,* however, is inapplicable to Mogler's case because the record does not suggest that Mogler spoke to Henning based on a belief that his employment was at risk. *See United States v. Najarian,* 915 F.Supp. 1460, 1478 (D.Minn.1996) (stating that defendant must subjectively believe he was compelled to give statement upon threat of losing job and that belief must be objec-

tively reasonable at time statement was made). Mogler initiated his conversation with Henning, and, at the time he made the statements, he was not in custody and was unaware that an investigation was already pending. Henning did not threaten Mogler's employment security and asked only for clarification of Mogler's voluntary statements.

■ Mogler's statement to his wife at their home is also admissible. Mogler, accompanied by Henning and another deputy, awakened his wife and told her that he had "messed around" with a minor. Although he was in custody, the statements were not elicited by the officers, and the district court did not err by allowing Henning to testify to the statement. *See Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966) (holding that statements given voluntarily and without compelling influences are admissible); *State v. Camacho,* 561 N.W.2d 160, 169 (Minn.1997) ("Coercive police activity is a necessary predicate to a finding that a confession is involuntary.").

## III

■ The district court's denial of a motion to change venue based on pretrial publicity will result in a new trial only if the defendant shows that the publicity had an effect on "the minds of the specific jurors involved in the case." *State v. Berkovitz,* 705 N.W.2d 399, 408 (Minn.2005) (quotation omitted). District courts have wide discretion in deciding motions for change of venue. *State v. Chambers,* 589 N.W.2d 466, 473 (Minn.1999). We will not reverse a conviction absent an abuse of this discretion and a showing that denying the motion prejudiced the defendant. *Id.*; *State v. Warren,* 592 N.W.2d 440, 447–48 (Minn.1999).

■ The district court did not abuse its discretion by denying Mogler's motion to change venue. To support his claim of prejudicial pretrial publicity, Mogler provided the district court with copies of three local newspaper articles, referred to one additional article, and stated that two television news stations had mentioned the case. The articles do not, however, demonstrate a level of publicity indicating that the mind of any juror was affected by the publicity. Although Mogler contends on appeal that several jurors acknowledged that they had heard about the case before the trial began, Mogler did not provide voir dire transcripts to permit an assessment of whether the publicity affected the impartiality of specific jurors. *See* Minn. R. Civ.App. P. 110.02, subd. 1 (stating that appellant has duty to order relevant transcripts for appeal).

### IV

■ Relevant evidence is generally admissible unless specifically excluded by applicable law. Minn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" than without the evidence. *Id.* 401. Evidence that is not relevant is inadmissible, and relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfairly prejudicing a party, confusing the issues, or misleading the jury. *Id.* 402–03. Evidentiary rulings rest within the discretion of the district court and will not be reversed absent an abuse of discretion. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003).

■ The district court sustained the state's objections to Mogler's cross-examination questions to RL on whether she felt comfortable with how her relationship with Mogler was progressing, whether Mogler coerced her to have sex, whether she believed he was in a position of authority over her, whether she believed Mogler was acting as a parent when she was with him, and whether she was in control of her decision-making when she and Mogler had sex in her vehicle.

The district court did not abuse its discretion by sustaining the state's objections. Because consent and use of authority are not relevant for purposes of Minn.Stat. § 609.344, subd. 1(e), the objections to questions relating to those issues were properly sustained. Questions that seek to solicit answers to ultimate fact issues are also impermissible; the district court properly sustained objections to questions on RL's belief about whether Mogler acted as a parent or her belief about his "position of authority." *See State v. MacLennan,* 702 N.W.2d 219, 234 (Minn.2005) (stating that witness cannot testify to ultimate fact if determination should be left to trier of fact). The question of whether RL felt in control of her decision-making was asked on recross-examination and was beyond the scope of the state's redirect, which focused only on Mogler's age and the number of times RL rode in Mogler's squad car. *See* Minn. R. Evid. 611(b) (limiting cross-examination to matters addressed in direct examination); *State v. Dille,* 258 N.W.2d 565, 569 (Minn.1977) (stating that court has broad discretion to determine scope of cross-examination).

Furthermore, Mogler has not demonstrated prejudice from the exclusion of these questions. The court allowed defense counsel to ask RL whether Mogler ever threatened her with arrest or suggested that she was suspected of a crime. The court also allowed testimony that RL contacted Mogler after their first sexual encounter with the intent of having sex again, and that she did not feel she received special treatment from Mogler.

Mogler was therefore able to question RL on facts relevant to whether he was in a position of authority over RL. The district court did not abuse its discretion by sustaining the state's objections.

## V

 In reviewing a claim of prosecutorial misconduct, we first examine the challenged conduct to determine whether any error occurred. *State v. Ford,* 539 N.W.2d 214, 228 (Minn.1995). If error is established, we then consider whether any misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial. *State v. Pendleton,* 706 N.W.2d 500, 509 (Minn.2005). We review improper prosecutorial statements under a harmless-error standard. *Id.*

 Mogler asserts that the county attorney committed prosecutorial misconduct in closing argument by saying that a police officer is always in a position of authority. We first note that Mogler did not object to the statements that he now contests. Although Mogler made a pretrial motion to preclude the state from arguing that a police officer is always in a position of authority, and the court denied it, he did not renew his objection during the closing argument to provide the court an opportunity to cure any erroneous statements. When a party has failed to object, we may review the claim depending on the gravity of the error. *See State v. Powers,* 654 N.W.2d 667, 678 (Minn.2003) (holding that defendant forfeits right to have issue considered on appeal when he fails to object to misconduct at trial). We will not grant a new trial if the misconduct is harmless beyond a reasonable doubt and the verdict is "surely unattributable to the error." *State v. Bradford,* 618 N.W.2d 782, 798, 800 (Minn.2000) (quotation omitted).

The prosecutor's statements do not constitute prosecutorial misconduct. Taken as a whole, the prosecutor's closing argument indicates that he advocated the state's view that Mogler, as a police officer, was in a position of authority, not that settled law establishes that a police officer is always in a position of authority. *See State v. Walsh,* 495 N.W.2d 602, 607 (Minn. 1993) (emphasizing that closing arguments should be reviewed "as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence"). The prosecutor properly based his arguments on facts specific to the case and the role of police officers in general. *See State v. Young,* 710 N.W.2d 272, 281 (Minn.2006) (stating that closing argument must be based on evidence or reasonable inferences from the evidence, but need not be colorless).

## VI

 District courts have considerable latitude in selecting the language for jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn. 1988). We review the selection of jury instructions for an abuse of discretion and focus on whether the refusal to give a requested instruction resulted in error. *State v. Kuhnau,* 622 N.W.2d 552, 555 (Minn.2001); *State v. Cole,* 542 N.W.2d 43, 50 (Minn.1996).

 The district court instructed the jury by reading Minn.Stat. § 609.344, subd. 1(e), and then stating each element of third-degree criminal sexual conduct. The instructions included the definition of "position of authority" in Minn.Stat. § 609.341, subd. 10, but, over Mogler's objection, excluded the sentence, "For the

purposes of subdivision 11 [of section 609.341], 'position of authority' includes a psychotherapist." We discern no error in omitting the requested instruction. Subdivision 11 applies only to second- and fourth-degree criminal sexual conduct, not to Mogler's charge of third-degree criminal sexual conduct. Consequently, the provision was not relevant to Mogler's charge, and the district court did not abuse its discretion by declining to include it in the instruction.

### VII

■ In considering a claim of insufficient evidence, we carefully examine the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to support the jury's verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). Mogler argues that, even if Minn.Stat. § 609.344, subd. 1(e), is not unconstitutionally vague, the evidence is insufficient to support the jury's finding that Mogler was in a position of authority over RL.

■ A review of the record establishes that the evidence is sufficient to support the jury's verdict. Mogler met RL through his employment as a police officer assigned to perform community policing. Mogler developed his relationship with RL by letting her ride in his squad car. Mogler was on duty and in uniform during both incidents of sexual intercourse. The first incident took place in a conference room at the police station. Although RL testified that she acted voluntarily in her relationship with Mogler, consent is not a defense to third-degree criminal sexual conduct. Minn.Stat. § 609.344, subd. 1(e). The jury could reasonably conclude that, for purposes of the third-degree criminal sexual-conduct prohibition, Mogler was in a position of authority over RL.

### VIII

■ The district court must order the presumptive sentence provided in the sentencing guidelines unless the case involves "substantial and compelling circumstances" to warrant a downward departure. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). The court cannot depart from the sentencing guidelines unless aggravating or mitigating factors are present. *State v. Spain*, 590 N.W.2d 85, 88 (Minn.1999). Only in a rare case will an appellate court reverse a district court's imposition of the presumptive sentence. *Kindem*, 313 N.W.2d at 7.

■ The district court did not abuse its discretion in sentencing Mogler. The court imposed the presumptive sentences of eighteen and twenty-three months on the two counts. Mogler correctly notes that the court-imposed fine exceeded the presentencing investigation's recommendation for a $1,200 fine. But the report also recommended up to fifteen years' probation, and, although the court imposed a higher fine, the court ordered only five years of probation. Further, the sentence is not unduly harsh because the fine is within the prescribed statutory range, and the court was required to impose jail time as a condition of probation. *See* Minn. Stat. § 609.344, subds. 2–3 (2002) (authorizing fine up to $30,000 for third-degree criminal sexual conduct and requiring time in jail or workhouse if sentence is stayed).

### DECISION

"Position of authority," as defined by Minn.Stat. § 609.341, subd. 10 (2002), and incorporated into Minn.Stat. § 609.344, subd. 1(e), is not unconstitutionally vague. The evidence is sufficient to support the jury's determination that Mogler was in a position of authority; the district court did not abuse its discretion in making its evidentiary rulings, denying Mogler's motion

for change of venue, choosing the jury instructions, or sentencing Mogler; and Mogler's claim of prosecutorial misconduct is unsupported by the record.

**Affirmed.**