*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JUSTIN PAUL COBLE,

Defendant-Appellant.

UNPUBLISHED
March 17, 2025
11:32 AM

No. 369130
Allegan Circuit Court
LC No. 2023-025851-FH

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of operating while intoxicated (OWI) causing serious impairment, MCL 257.625(5). The trial court sentenced defendant to serve a 45-day jail sentence and 3 years of probation. We affirm.

## I. FACTS

Defendant rear-ended another vehicle that was stopped in a turn lane on M-89. The victim's vehicle flew 50 yards and rolled over, breaking the victim's arm and causing permanent nerve damage to his thumb. While defendant and the attending deputy were in an ambulance at the scene, the deputy "smell[ed] an odor of intoxicants or alcohol coming from [defendant's] person." A paramedic disclosed to the deputy that defendant was diabetic. The deputy indicated that he would generally conduct field sobriety tests if he smelled intoxicants; however, he was unable to conduct those tests due to the circumstances of this case, including the fact that defendant had to be taken to the hospital.

The deputy applied for a search warrant for defendant's blood, stating the following in the supporting affidavit of probable cause:

> [Defendant] was involved in an accident involving injuries. The other vehicle was stopped in the turn lane on M89 near 13th St to turn onto 13th St when [defendant] rear ended him. The other vehicle overturned roughly 50 yards from the intersection[,] and the driver was injured and transported to the hospital.

[Defendant] was also injured and is diabetic. He was located inside [a truck] in the driver's seat.

* * *

I could smell a strong odor of intoxicants coming from [defendant's] person. [Defendant] was too injured for sobriety tasks and refused the PBT. [Defendant] is diabetic and also refused any chemical tests.

After the deputy obtained the search warrant, he served it at the hospital. Defendant's blood sample concluded that his blood alcohol level (BAL) was 0.203 grams of alcohol per 100 milliliters of blood.

Defendant moved to suppress the blood-test results, arguing that the affidavit did not support a finding of sufficient probable cause to issue the search warrant. After a hearing on the motion was held, the trial court denied the motion. The trial court reasoned as follows:

I don't disagree that the fact that [defendant is] a diabetic really isn't an issue for the Court in regards to determining probable cause. But I do believe that there is probable cause stated within the affidavit. There was a strong odor of intoxicants in addition to an accident that the officer indicated was caused by the defendant; that he rear-ended another vehicle. The other vehicle overturned roughly 50 yards from an intersection, so obviously a pretty powerful rear-ending situation. The combination of those two things I believe does allow for probable cause to issue a search warrant.

At trial, defense counsel attempted to elicit testimony from an expert witness, a neuropsycho pharmacologist, regarding the effects of ketoacidosis "[b]ecause ketoacidosis mimics the signs of intoxication and [the expert witness] trains other Officers and Judges in that science." The trial court determined that although there was "evidence that someone made a statement about [defendant] having type 2 diabetes," there was no evidence to support that defendant "was suffering from ketoacidosis." The trial court acknowledged, however, that "there was a side comment by a Police Officer or a medical personnel who had no substantive evidence to support that . . . [defendant] was suffering from ketoacidosis." Nevertheless, the expert witness testified that isotone "smells like the odor of alcohol," and "[h]igh isotone levels are seen in people who are diabetic."

The jury found defendant guilty, and the trial court sentenced defendant, as stated earlier. Defendant now appeals.

## II. PROBABLE CAUSE FOR SEARCH WARRANT

Defendant first argues that the affidavit did not contain sufficient facts for a reasonable magistrate to find that there was probable cause to issue a search warrant for defendant's blood. We disagree.

-2-

## A. STANDARD OF REVIEW

We review de novo questions of constitutional law and a trial court's decision on a motion to suppress evidence. *People v Joly*, 336 Mich App 388, 395; 970 NW2d 426 (2021). "A trial court's factual findings made when ruling on a motion to suppress are reviewed for clear error." *People v Woodard*, 321 Mich App 377, 382; 909 NW2d 299 (2017). "Appellate review of a magistrate's determination whether probable cause exists to support a search warrant involves neither de novo review nor application of an abuse of discretion standard." *People v Unger*, 278 Mich App 210, 244; 749 NW2d 272 (2008) (quotation marks and citation omitted). Instead, "the preference for warrants. . . requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Id*. at 244-245 (quotation marks and citation omitted). "A reviewing court must give great deference to a magistrate's finding of probable cause to issue a search warrant." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008).

## B. ANALYSIS

The Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV.

A magistrate reviewing a search warrant affidavit must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). Reviewing courts consider whether the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. *Id*. at 238-239. Our review also focuses on "whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Whitfield*, 461 Mich 441, 446; 607 NW2d 61 (2000) (quotation marks and citation omitted). As previously stated, "[w]e grant deference to a magistrate's determination of probable cause to issue a search warrant." *People v Czuprynski*, 325 Mich App 449, 469; 926 NW2d 282 (2018). The magistrate's finding of probable cause to issue a warrant must be based on the information in the warrant affidavit. MCL 780.653. The judicial officer must "be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whitely v Warden, Wy State Penitentiary*, 401 US 560, 564; 91 S Ct 1031; 28 L Ed 2d 306 (1971). The warrant cannot be rehabilitated with information within the requesting officer's mind that was not submitted to the judge. *Id*. at 565-566. Further, "the affidavit must contain facts within the knowledge of the affiant and not mere conclusions or beliefs. The affiant may not draw his or her own inferences, but rather must state matters that justify the drawing of them." *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006) (citation omitted).

Conclusory statements in an affidavit—such as merely stating that a defendant appeared to be "under the influence of intoxicating liquor"—are insufficient to support a finding of probable cause because "[t]he affiant is not free to 'draw his own inferences. He must state matters which justify the drawing of them.' " *People v Sloan*, 206 Mich App 484, 485, 487; 522 NW2d 684 (1994). For example, in *Mullen*, 282 Mich App at 16, 27-28, this Court found that a reasonable

-3-

magistrate could have concluded that probable cause existed for a search warrant of the defendant's blood because the affidavit stated that the officer: saw defendant drive through a red light, detected the strong odor of alcohol, noticed that the defendant had watery eyes, and administered defendant's preliminary breath test with a result of 0.15. Similarly, in *People v Cords*, 75 Mich App 415, 424; 254 NW2d 911 (1977), this Court found that a reasonable magistrate could have concluded that probable cause existed for a search warrant of the defendant's blood because the affidavit indicated that the defendant's breath smelled strongly of alcohol, the officer had traced a partially full can of beer to defendant's vehicle, and the driver of the other car had been killed in the accident. In the present case, the affidavit stated the following:

> [Defendant] was involved in an accident involving injuries. The other vehicle was stopped in the turn lane on M89 near 13th St to turn onto 13th St when [defendant] rear ended him. The other vehicle overturned roughly 50 yards from the intersection[,] and the driver was injured and transported to the hospital. [Defendant] was also injured and is diabetic. He was located inside [a truck] in the driver's seat.
>
> *  *  *
>
> I could smell a strong odor of intoxicants coming from [defendant's] person. [Defendant] was too injured for sobriety tasks and refused the PBT. [Defendant] is diabetic and also refused any chemical tests.

Therefore, the officer did not merely state that defendant appeared to be under the influence of intoxicants. Instead, the officer explained the following reasons for believing that defendant was under the influence: (1) that defendant smelled strongly of intoxicants, and (2) that defendant hit a stopped vehicle at a rate of speed fast enough to leave the other vehicle overturned roughly 50 yards away from the intersection. We hold that the strong odor of intoxicants, combined with the physical facts of the collision, could have led a reasonably cautious person to have concluded that there was a substantial basis for the finding of probable cause in this case. See *Whitfield*, 461 Mich at 446.

Notably, defendant specifically argues that because diabetes can explain both the accident and the odor of intoxicants, there was not enough information in the affidavit to allow a reasonable person to find probable cause. But, the magistrate was responsible for making "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 US at 238. Moreover, "[p]robable cause does not require certainty. Rather, it requires only a probability or substantial chance of criminal activity." *Mullen*, 282 Mich App at 27 (quotation marks and citation omitted). Because the information in the affidavit could have led a reasonably cautious person to conclude that there was a fair probability that defendant was operating under the influence—regardless of whether the information could have also led a reasonably cautious person to conclude that there was a fair probability that defendant was suffering from a health complication—the magistrate did not err. See *Whitfield*, 461 Mich at 446.

Therefore, granting deference to the magistrate's decision, we conclude that a reasonably cautious person could have concluded that the affidavit provided a substantial basis for the finding of probable cause in this case. See *Whitfield*, 461 Mich at 446; *Czuprynski*, 325 Mich App at 469.

## III. ADMISSION OF BLOOD TEST RESULTS

Defendant next argues that the trial court erred by admitting his blood-test results because the phlebotomist that conducted his blood draw did not testify. We disagree.

### A. STANDARD OF REVIEW

"The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "An appellate court should generally defer to the trial court's judgment, and if the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194 (2011). A "trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion." *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

### B. ANALYSIS

MCL 257.625a(6)(c) provides, in relevant part, as follows:

> (6) The following provisions apply to chemical tests and analysis of a person's blood, urine, or breath, other than a preliminary chemical breath analysis:
>
> * * *
>
> (c) A sample or specimen of urine or breath must be taken and collected in a reasonable manner. Only a licensed physician, or an individual operating under the delegation of a licensed physician under section 16215 of the public health code, 1978 PA 368, MCL 333.16215, qualified to withdraw blood and acting in a medical environment, may withdraw blood at a peace officer's request to determine the amount of alcohol or presence of a controlled substance or other intoxicating substance in the person's blood, as provided in this subsection.

Accordingly, the following rules govern the introduction of a blood-sample analysis:

> The party seeking introduction must show (1) that the blood was timely taken (2) from a particular identified body (3) by an authorized licensed physician, medical technologist, or registered nurse designated by a licensed physician, (4) that the instruments used were sterile, (5) that the blood taken was properly preserved or kept, (6) and labeled, and (7) if transported or sent, the method and procedures used therein, (8) the method and procedures used in conducting the test, and (9) that the identity of the person or persons under whose supervision the tests were conducted be established. [*Clark v Flint*, 60 Mich App 364, 367; 230 NW2d 435 (1975) (quotation marks, alteration, and citation omitted).]

On appeal, defendant argues that the prosecutor failed to establish factors one (blood was timely taken), three (authorized medical personnel), four (sterile instruments used), and five (sample properly preserved or kept) of the rules governing the introduction of a blood-sample. Specifically, defendant argues that only the phlebotomist who drew defendant's blood could provide testimony to satisfy these criteria. We disagree.

In *Rose v Paper Mills Trucking Co*, 47 Mich App 1, 5; 209 NW2d 305 (1973), this Court indicated that the testimony of the medical examiner who took the relevant blood sample was required to establish the first six of the above-listed criteria. However, after the *Rose* opinion, this Court clarified that *Rose* did not create "an inelastic rule requiring that compliance with the initial six criteria be established through the testimony of a physician or nurse." *Cords*, 75 Mich App at 427. This Court went on to explain that the rules governing the introduction of a blood-sample analysis "were designed to insure [sic] that the blood tested was in fact that of the accused and to prevent the admission of test results obtained from an unreliable blood sample." *Id*. at 428. Therefore, the crux of this issue is not whether the phlebotomist needed to testify, but whether the test results were obtained from a reliable blood sample. See *id*. at 427-428.

In the present case, defendant's blood was drawn by a phlebotomist upon his arrival at the hospital. The deputy's testimony demonstrated that the phlebotomist used a factory-sealed, state-issued kit equipped with everything necessary for a proper blood draw. The deputy testified that the associated forms and labels were completely and properly filled out, including the identity of the person who performed the draw, the date and time of the draw, and the identity of the officer who observed the draw.[1] After defendant's blood was drawn, the kit was resealed in front of the phlebotomist and transported to the police station where it was placed in an evidence locker until it was sent to the Michigan State Police Laboratory to be analyzed. A forensic analyst testified that blood samples do not need to be refrigerated because the vials contain an anticoagulant and preservative. Therefore, although the phlebotomist did not testify at trial, the testimony admitted at trial was sufficient to ensure that the blood tested was defendant's and that the sample was reliable. See *id*. Accordingly, no error has been shown.

## IV. EXCLUSION OF KETOACIDOSIS TESTIMONY

Defendant next argues that the trial court erred when it denied him the opportunity to question an expert witness about ketoacidosis when there was testimony the prior day regarding defendant's diabetes. We disagree.

---

[1] Defendant further argues that because the deputy's back was turned during the blood draw, he would not have known whether the proper procedure was followed. This argument is not persuasive because the deputy testified that he observed the phlebotomist open the kit, fill out the paperwork, and sterilize defendant's skin. Although the deputy did not watch the actual blood being taken from defendant's arm, he watched the events leading up to, and following, the blood draw, and he stayed in the room during the blood draw. During this entire time, the deputy explained that there was nothing done outside of standard procedure.

## A. STANDARD OF REVIEW

As stated earlier, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Aldrich*, 246 Mich App at 113. However, we review "de novo the constitutional question whether a defendant was denied [his or] her constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

## B. ANALYSIS

"Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *Unger*, 278 Mich App at 249. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v South Carolina*, 547 US 319, 324; 126 S Ct 1727; 164 L Ed 2d 503 (2006) (quotation marks and citations omitted). "A criminal defendant has a state and federal constitutional right to present a defense." *Kurr*, 253 Mich App at 326.

"Although the right to present a defense is a fundamental element of due process, it is not an absolute right. The accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984) (quotation marks and citation omitted). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). Moreover, a defendant's right to present a defense is not "infringed by MRE 402, which simply bars the admission of irrelevant evidence." *Unger*, 278 Mich App at 250.

Evidence that defendant had diabetes was amply introduced; however, only one piece of evidence specifically referring to the term "ketoacidosis" was introduced. A portion of the deputy's body camera footage was shown to the jury, during which another officer briefly mentioned, "he's acting just like . . . ketoacidosis." The next day, defense counsel attempted to question its expert witness on what ketoacidosis is and how it can mimic alcohol intoxication. The prosecution objected, arguing that there was no evidence of ketoacidosis, which the trial court agreed with. The trial court reasoned as follows:

> [T]here's no evidence that [defendant] was suffering from ketoacidosis. There is evidence that someone made a statement about him having type 2 diabetes. I don't recall the ketoacidosis, but even if that was in the testimony, there's—there was a side comment by a Police Officer or a medical personnel who had no substantive evidence to support that, or that [defendant] was suffering from ketoacidosis. They had no evidence to pursue that. They had nothing to support that. It was a comment made on the side.

Although defense counsel was unable to question its expert regarding what ketoacidosis is, the expert witness testified that isotone "smells like the odor of alcohol," and "[h]igh isotone levels are seen in people who are diabetic." Additionally, the deputy acknowledged that someone experiencing ketoacidosis can have signs of intoxication. Therefore, the trial court's ruling did not prohibit defendant from presenting his own witness or establishing a defense.

Notably, defense counsel did not admit any evidence that defendant had actually suffered from a ketoacidosis episode—a medical emergency that had it occurred, the hospital would have had to treat right away, resulting in documentation. Because there was no reliable evidence that defendant had actually suffered from a ketoacidosis episode, the trial court did not abuse its discretion by deeming expert testimony on the matter irrelevant and, therefore, inadmissible. See MRE 402.

## V.  JURY INSTRUCTIONS

Defendant next argues that the trial court erred by: (1) not giving a chance for any questions or objections on the record before jury instructions were read; (2) excluding M Crim JI 15.5(1); (3) reading M Crim JI 4.16 regarding specific intent, when the charge did not have a specific intent requirement; and (4) not reading a proximate cause jury instruction.  Defendant argues that these errors, taken as a whole, deprived defendant from having a properly instructed jury.  We disagree with defendant's first, second, and fourth arguments, and although we agree with defendant's third argument, we conclude that any error was harmless.

### A. STANDARD OF REVIEW

Jury instructions that involve questions of law are reviewed de novo, "[b]ut a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (quotation marks and citation omitted).  "We must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).  Reversal is not required when "the jury instructions, taken as a whole, sufficiently protect the defendant's rights." *People v Moldenhauer*, 210 Mich App 158, 159; 533 NW2d 9 (1995).

### B. ANALYSIS

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002).  Jury "[i]nstructions must cover each element of each offense charged, along with all material issues, defenses, and theories that have evidentiary support." *People v Wess*, 235 Mich App 241, 243; 597 NW2d 215 (1999).  "Conversely, an instruction that is without evidentiary support should not be given." *Id*. "This Court reviews jury instructions in their entirety to determine if there is error requiring reversal." *Id*.  Even if imperfect, an instruction "is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502.  "[I]f an applicable instruction is not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *Riddle*, 467 Mich at 124.  A conviction will be reversed only if, "after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 124-125.

### 1. QUESTIONS OR OBJECTIONS BEFORE JURY INSTRUCTIONS WERE READ

Defendant briefly asserts there was no chance to ask questions about, or object to, jury instructions before they were read.  As a preliminary matter, this issue is waived because it was

not raised in defendant's questions presented. *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000) (An issue not contained in the statement of questions presented is waived on appeal.). Additionally, defendant acknowledges that there were discussions in chambers before trial regarding jury instructions, and that defense counsel objected to the jury instructions after they were given; notably, the court apparently amended the verdict form in light of defense counsel's objection before it was presented to the jury. Therefore, defendant fails to explain how his alleged inability to object before the jury instructions were presented to the jury prejudiced him, especially because he ultimately preserved each jury-instruction issue raised on appeal. "Failure to brief an issue on appeal constitutes abandonment." *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009).

## 2. EXCLUSION OF M CRIM JI 15.5(1)

Defendant next argues that the trial court erred by excluding M Crim JI 15.5(1) from the jury instructions. We disagree.

In the present case, the trial court read M Crim JI 15.5, but omitted the first paragraph of the instruction, over defendant's objection. M Crim JI 15.5 is prefaced by the following language: "Choose appropriate paragraphs." M Crim JI 15.5. Therefore, only the applicable paragraphs are meant to be read in each case. Further, the first paragraph of M Crim JI 15.5 concerns a defendant's "mental and physical condition" at the time he or she "operated the motor vehicle," and whether his or her "reflexes, ability to see, way of walking and talking, manner of driving, and judgment" were normal. M Crim JI 15.5(1).[2]

Because the deputy did not make contact with defendant until after the accident, there was no testimony regarding defendant's mental or physical condition while he was still driving. In fact, the deputy did not make contact with defendant until defendant was already sitting on a stretcher in the ambulance being treated by medical personnel. Therefore, there was no evidentiary support that would require reading M Crim JI 15.5(1). See *Wess*, 235 Mich App at 243 (jury instructions require evidentiary support). Therefore, the trial court did not abuse its discretion by not reading the entirety of M Crim JI 15.5.

## 3. INCLUSION OF M CRIM JI 4.16

Defendant next argues that the trial court erred by including M Crim JI 4.16 in the jury instruction. We agree; however, we find this error harmless.

In this case, the trial court read M Crim JI 4.16, which states that "[t]he defendant's intent may be proved by what [he / she] said, what [he / she] did, how [he / she] did it, or by any other

---

[2] M Crim JI 15.5(1) states "What was the mental and physical condition of the defendant at the time [he/she] operated the motor vehicle? Were the defendant's reflexes, ability to see, way of walking and talking, manner of driving, and judgment normal? If there was evidence that any of these things seemed abnormal, was this caused by [drinking alcohol/using or consuming a controlled substance/using or consuming an intoxicating substances/using or consuming a combination of (alcohol/a controlled substance/and intoxicating substance)]?"

facts and circumstances in evidence." On appeal, both parties agree that the trial court erred by reading M Crim JI 4.16 because a charge of OWI causing serious impairment does not require specific intent. See MCL 257.625(5). Any error that was created by the reading of M Crim JI 4.16 was harmless, however.

A preserved, nonconstitutional error is presumed to be harmless, and the defendant bears the burden of showing that the error resulted in a miscarriage of justice. *People v Lukity*, 460 Mich 484, 493-494; 596 NW2d 607 (1999).

> In order to overcome the presumption that a preserved nonconstitutional error is harmless, a defendant must persuade the reviewing court that it is more probable than not that the error in question was outcome determinative. An error is deemed to have been outcome determinative if it undermined the reliability of the verdict. In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence. [*People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000) (quotation marks and citations omitted).]

"Instructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Kowalski*, 489 Mich at 501 (quotation marks and citation omitted). "[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. at 501-502.

In the present case, defendant's rights were protected and the error was not prejudicial to him because the imperfect instruction technically added an additional burden for the *prosecution* to prove, making conviction, in theory, a more onerous bar to reach. Therefore, defendant cannot establish that the outcome of his trial would have been different if the trial court had not read M Crim JI 4.16. See *id*.

### 4. PROXIMATE CAUSE JURY INSTRUCTION

Defendant next argues that the trial court erred by not including a proximate-cause jury instruction after defense counsel requested it. As a preliminary matter, this issue is waived because it was not raised in defendant's questions presented. *Mackle*, 241 Mich App at 604 n 4 (An issue not contained in the statement of questions presented is waived on appeal.).

At trial, defense counsel argued that defendant's operation of his vehicle was not the proximate cause of the accident, and because there was no accident reconstruction, the prosecution did not prove proximate cause beyond a reasonable doubt. The trial court failed to explain its reasoning for not including the proximate-cause instruction, aside from stating that it was discussed in chambers. Nevertheless, we conclude that the trial court did not abuse its discretion by not including the proximate cause jury instruction because the evidence presented displayed that defendant hit a stopped vehicle at a rate of speed fast enough to leave the other vehicle overturned roughly 50 yards away from the intersection. There is no requirement that accident reconstruction occur in every case.

Next, defendant argues that the trial court: (1) erred by assigning 20 points for offense variable (OV) 18 because the uncertainty measure put defendant's blood-test-result range under 0.20%, and (2) did not overcome the presumption required by MCL 769.34 to issue jail time. We disagree.

## A. STANDARD OF REVIEW

A trial court's factual findings "must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "This Court reviews for clear error a trial court's findings in support of [a] particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). "Clear error exists when we are left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). "De novo review means we review this issue independently, without any required deference to the courts below." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). "Preserved scoring issues are reviewed to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score." *People v Waclawski*, 286 Mich App 634, 680; 780 NW2d 321 (2009) (quotation marks and citation omitted).

## B. OV 18

Although the sentencing guidelines are advisory, trial courts must still consider the guidelines in sentencing determinations. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). When calculating the points, the trial court must assess the highest applicable points as provided by the statutes. See *People v Morson*, 471 Mich 248, 260; 685 NW2d 203 (2004). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of the PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

OV 18 applies if the offense or attempted offense involves the operation of a vehicle, MCL 777.22(1), and it is assigned points when an operator's ability to operate the aforementioned vehicle is affected by alcohol or drugs, MCL 777.48. The trial court must assign 20 points when the offender's "bodily alcohol content was 0.20 grams or more per 100 milliliters of blood . . . ." MCL 777.48(1)(a). But, the trial court must assign 15 points when the offender's "bodily alcohol content was 0.15 grams or more but less than 0.20 grams per 100 milliliters of blood . . . ." In this case, defendant argues that OV 18 should have been assigned 15 points, instead of 20 points.

At trial, the forensic analyst testified that defendant's results contained "0.203 grams of alcohol per 100 milliliters of blood." But, the expert witness that defendant called, a neuropsychopharmacologist, testified that there was "a plus or minus measure of uncertainty [of] .019 so the actual range would be between .184 to .222 . . . ."

At the sentencing hearing, defendant objected to the assignment of 20 points for OV 18 because defendant's BAL report had an uncertainty level that could have made his results as low as 0.184. The prosecution replied, arguing that, under defendant's logic, defendant's BAL "could

also be higher." The trial court reasoned as follows, "[b]ased on the testimony at the trial and the reports the Court feels this is properly scored based on the blood analysis from the Michigan State Police Crime Lab."

The trial court was permitted to find defendant's BAL at sentencing based on the evidence placed on the record at trial, such as the forensic analyst's testimony. See *People v Biddles*, 316 Mich App 148, 158-159; 896 NW2d 461 (2016). Therefore, the record adequately supports the trial court's assessment of 20 points for OV 18, and the trial court properly exercised its discretion. See *Waclawski*, 286 Mich App at 680.

## C. JAIL TIME

Defendant further argues that the trial court violated: (1) MCL 769.34(4)(a) by imposing jail time instead of just probation because the recommended minimum sentence range was less than 18 months, and (2) MCL 769.34(3)(b) by basing its departure from the guidelines on the fact that the victim suffered a serious injury. MCL 769.34 states, in relevant part, as follows:

> (3) A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the departure is reasonable and the court states on the record the reasons for departure. All of the following apply to a departure:
>
> * * *
>
> (b) The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight.
>
> * * *
>
> (4) Intermediate sanctions must be imposed under this chapter as follows:
>
> (a) If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record reasonable grounds to sentence the individual to incarceration in a county jail for not more than 12 months or to the jurisdiction of the department of corrections for any sentence over 12 months.

MCL 769.31(b) defines the term "intermediate sanction" as "probation or any sanction, other than imprisonment in a county jail, state prison, or state reformatory, that may lawfully be imposed."

In this case, defendant's recommended sentencing guidelines minimum sentence was 0 to 17 months. The trial court sentenced defendant to serve a 45-day jail sentence and 3 years of probation, reasoning as follows:

I don't know that the sentencing guidelines take into account the emotional effects on a victim of a crime in this situation. The lifelong injury that has occurred to [the victim]. The stress/loss of employment certainly is not taken into account, the sentencing guidelines of this victim of this crime. The inability of [defendant] to consider or in this Court's opinion even show any type of remorse regarding the issue he just says he doesn't remember it. This is his third drinking and driving offense. There is life long harm to a victim of a crime. I believe a period of incarceration is appropriate. Whether or not he has an evaluation thing he doesn't need substance abuse counseling the Court would disagree. You continued to drink after this incident as indicated. Two weeks prior to the pre-sentencing interview you were still drinking. I don't think he's taken it seriously.

Therefore, the trial court clearly considered a variety of factors, and found reasonable grounds to sentence defendant to incarceration, pursuant to MCL 769.34(4)(a). Defendant argues that the trial court made this decision on the basis of the victim's injuries, which were already considered under the charged offense; however, the trial court clearly made its decision on a plethora of considerations, such as the emotional effects on the victim, the victim's loss of employment, and defendant's lack of remorse and drunk-driving history. Therefore, the trial court did not err by sentencing defendant to jail time.

## VII. CUMULATIVE ERROR

Finally, defendant argues that the cumulative effect of the alleged errors deprived him of a fair trial. We disagree.

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "In order to reverse on the grounds of cumulative error, the errors at issue must be of consequence." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). "In other words, the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Id*. In assessing whether the cumulative effect of several otherwise minor errors warrants a new trial, this Court will only aggregate actual errors. *People v LeBlanc*, 465 Mich 575, 591 n 12; 640 NW2d 246 (2002).

Because the only error in this case was the trial court's inclusion of M Crim JI 4.16, which as previously stated, constituted harmless error, there was no cumulative error requiring reversal in this case. See *Knapp*, 244 Mich App at 388.

Affirmed.

/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney

-13-